**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

| | |
|---|---|
| **TENISHA N. JIGGETTS** | : |
| **4702 Megan Drive** | : |
| **Clinton, Maryland 20735** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| **and** | : |
| | : Civil Action Number |
| **KAREN W. COOPER** | : |
| **4426 Ninth Street, NW** | :_____ |
| **Washington, D.C. 20011** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| **v.** | : |
| | : |
| **THE DISTRICT OF COLUMBIA** | : |
| **A Municipal Corporation** | : |
| **441 Fourth Street, NW** | : |
| **Washington, D.C. 20001** | : |
| | : |
| **and** | : |
| | : |
| **DANIEL W. CIPULLO** | : |
| **500 Indiana Avenue, NW** | : |
| **Washington, D.C. 20001** | : |
| | : |
| **SERVE:** | : |
| **The Honorable Muriel Bowser** | : |
| **Executive Office of the Mayor** | : |
| **1350 Pennsylvania Avenue, NW** | : |
| **Suite 316** | : |
| **Washington, DC 20004** | : |
| | : |
| **Karl A. Racine, Attorney General for the** | : |
| **District of Columbia** | : |
| **441 4th Street, NW** | : |
| **Suite 650** | : |
| **Washington, DC 20004** | : |
| | : |
| **Defendants.** | : |

=====================================

1

## COMPLAINT

Karen Cooper and Tenisha Jiggetts, by and through undersigned counsel, respectfully submit this Complaint against the District of Columbia and Dan Cipullo. Plaintiff Tenisha Jiggetts alleges gender and race discrimination, Human Rights Act violations, hostile work environment, retaliation, assault, false imprisonment, intentional infliction of emotional distress, violations of the Equal Pay Act of 1963 and negligent training and supervision. Karen Cooper alleges violations of the Equal Pay Act of 1963. In support of their respective claims, plaintiffs Tenisha Jiggetts and Karen Cooper state as follows:

## JURISDICTION AND VENUE

1.      Plaintiff Tenisha Jiggetts ("Jiggetts") asserts that this action arises under 42 U.S.C. §2000(e)5(f)(1), 42 U.S.C.  §2000(e)5(f)(3), 42 U.S.C. §1983, 28 U.S.C. §1331, et. seq., 28 U.S.C. §1343(a)(3) and 29 *U.S.C. §*206(d), as amended. This Court also has supplemental jurisdiction of all claims pursuant to 28 U.S.C. §1367(b).

2.      Jiggetts is filing this Complaint within ninety (90) days of receipt of the U.S. Equal Opportunity Employment Commission Dismissal and Notice of Rights dated and issued on February 20, 2015 by Mindy E. Weinstein, Acting Director, U.S. Equal Opportunity Employment Commission, Washington Field Office, 131 M. Street, N.E., Suite 4NW02F, Washington, D.C. 20507.

3.      Plaintiff Karen Cooper ("Cooper") asserts that this action arises under the Equal Pay Act of 1963, 29 *U.S.C. §*206(d), as amended.

4.      Copper is filing this Complaint within two (2) years of the alleged Equal Pay Act of 1963 ("EPA") underpayment.

5.     Jiggetts submits that this Court has jurisdiction over all claims for relief cited herein including state claims under the supplemental and ancillary jurisdiction of the Federal Court. Venue is proper in this Court as set forth herein.

6.     Cooper submits that this Court has jurisdiction over all claims for relief cited herein including state claims under the supplemental and ancillary jurisdiction of the Federal Court. Venue is proper in this Court as set forth herein.

## PARTIES

7.     Jiggetts is a resident of the State of Maryland.

8.     Jiggetts is an African-American female who is forty-five (45) years old.

9.     At all times relevant herein, Jiggetts was employed by defendant District of Columbia, specifically, the Superior Court of the District of Columbia.

10.     Cooper is a resident of the District of Columbia.

11.     Cooper is an African-American female who is sixty (60) years old.

12.     At all relevant times herein, Cooper was employed by defendant District of Columbia, specifically, the Superior Court of the District of Columbia.

13.     Defendant District of Columbia is a municipality organized pursuant to the laws of the United States with the authority to sue and be sued.

14.     The District of Columbia, among other things, is responsible for the operation of the Superior Court of the District of Columbia as an agency of the local government.

15.     At all times relevant herein, defendant Daniel W. Cipullo ("Cipullo") was the Director of the Superior Court of the District of Columbia Criminal Division.

16.     Cipullo is being sued in his official and individual capacity.

17.     At all times relevant herein, Cipullo was a Superior Court of the District of Columbia employee and the Director of the Criminal Division acting under the scope of his employment with the Superior Court of the District of Columbia.

## FACTS
**Tenisha Jiggetts**

18.     In 1991, Jiggetts was awarded her Bachelor of Arts from Howard University.

19.     In 1996, Jiggetts was awarded her juris doctor from the George Washington University National Law Center.

20.     Jiggetts took the District of Columbia Bar examination and in October of 1999, Jiggetts was admitted to the District of Columbia Bar.

21.     In 1998, Jiggetts, who is an African-American female, commenced employment with the Superior Court of the District of Columbia ("DC Superior Court").

22.     From September of 1998 to January 2000, Jiggetts served as a judicial law clerk DC Superior Court Senior Judges.

23.     At the conclusion of her judicial clerkship, from January 2000 to June 2004, Jiggetts served as an Assistant Attorney General with the Office of the Attorney General for the District of Columbia.

24.     As an Assistant Attorney General with the Office of the Attorney General for the District of Columbia Jiggetts prosecuted more than two-hundred (200) cases.

25.     From 2004 to 2008, Jiggetts served as an attorney for the DC Superior Court Probate Division.

26.     During the period of time that Jiggetts was assigned to the DC Superior Court Probate Division, she was a GS-13.

27.     In June of 2008, Jiggetts was transferred to the DC Superior Court Criminal Division.

28.     Jiggetts position with the DC Superior Court Criminal Division was an Attorney-Advisor.

29.     During the period of time that Jiggetts was assigned to the DC Superior Court Criminal Division, she was a GS-13.

30.     During her tenure as the Attorney-Advisor with the Superior Court of the District of Columbia Criminal Division, Ms. Jiggetts supervised three (3) employees, Kiger Sigh, Athena Hemphill and Angela Lee.

31.     During her tenure as the Attorney-Advisor with the Superior Court of the District of Columbia Criminal Division, Jiggetts received an award for ten (10) years of service at the DC Superior Court's annual employees' ceremony in 2011.

32.     During her tenure as the Attorney-Advisor with the Superior Court of the District of Columbia Criminal Division, Jiggetts was featured in the DC Superior Court newsletter on two occasions; first in the "Rave Reviews" section based on a letter a senator wrote to the Clerk of the Court to commend Jiggetts for the assistance she provided to a senator in 2010 or 2011 with a court matter and second; in 2013 for the "Adopt-a-School" program held at DC Superior Court with McKinley Tech students.

33.     Jiggetts received several certificates for various training courses, including: Leadership in a Diverse Court Environment; High Impact Feedback and Employee Engagement; 2010 National Community Prosecution Conference; Professional Development for DC Courts' Supervisors and Managers; HR Policies, Performance Management and Best Practices; Emotional Intelligence in the Workplace; Public Service: Customer Service in the DC Courts: When

Customer is Serious Business; Resolving Individual and Team Conflicts; 2012 Information Security Awareness Training; Microsoft Office Excel 2003: Level 1 and; Oracel 10g: Business Intelligence Discoverer Viewer.

34.     Jiggetts was a member of the National Association of Court Management and she received a Certificate of Appreciation in recognition of her valuable contributions to Career Day: Future Leaders Walker Mill Middle School.

35.     In 2010, 2011 and 2012, Cipullo assigned a performance rating of a four (4) out of five (5) to Jiggetts for work that "exceeded expectations" and she received a performance bonus.

36.     In 2006 and 2007, Constance Starks, the DC Superior Court Register of Wills assigned a performance rating of a five (5) out of five (5) for work that was outstanding to Jiggetts and a four (4) out of five (5) in 2005 all of which resulted in Jiggetts receiving a performance bonus for each of the afore-mentioned years.

37.     Jiggetts supervisor while she served as the Attorney-Advisor with the DC Superior Court Criminal Division was Daniel W. Cipullo ("Cipullo"), the Director of the Superior Court of the District of Columbia Criminal Division

38.     Cipullo is a Caucasian male who has been the Director of the DC Superior Court Criminal Division for many years, upon information and belief, since 1996.

39.     During her tenure as an Attorney-Advisor with the DC Superior Court Division, Jiggetts was subjected to race and gender discrimination, a hostile work environment and Cipullo retaliated against Jiggetts on numerous occasions.

40.     In August 2013, Jiggetts' 2013 Performance Evaluation was due.

41.     As of August 2013, Cipullo had not provided Jiggetts with her performance evaluation.

42.     As a result of Cipullo's failure to provide Jiggetts with her 2013 performance evaluation, she was precluded from applying for DC Superior Court vacancies because an applicant is required to submit their most recent performance evaluation when applying for a vacant position.

43.     Jiggetts made efforts to transfer to another division in the DC Superior Court.

44.     Cipullo sabotaged Jiggetts efforts to transfer to another DC Superior Court Division as a member of the selection panel or he would speak negatively about Jiggetts to other directors.

45.     In approximately June of 2014, Jiggetts met with the former Clerk of the Court, Duane Delaney ("Clerk of the Court"), and renewed her request to be transferred to another DC Superior Court Division.

46.     During this meeting, Jiggetts advised the Clerk of the Court that she had not received her 2013 performance evaluation from Cipullo.

47.     The Clerk of the Court expressed his surprise to Jiggetts when he learned that she had not received a performance evaluation in over a year.

48.     Jiggetts was the only DC Superior Court Criminal Division employee who did not receive her 2013 performance evaluation in a timely manner.

49.     A year later, in July 2014, Jiggetts finally received her 2013 performance evaluation from Cipullo.

50.     Jiggetts did not sign her 2013 performance evaluation completed by Cipullo because the performance evaluation did not accurately portray Jiggetts' performance in her capacity as a DC Superior Court Attorney Advisor with the Criminal Division.

51.     Jiggetts did not sign her 2013 performance evaluation completed by Cipullo because the performance evaluation was unreliable, not credible, and the scores were inaccurate and portrayed her in a negative light.

52.     Jiggetts prepared an Addendum which corrected Cipullo's inaccuracies

53.     In Jiggetts' addendum she noted her achievements such as the Adopt-a-School program coordinated by the Great Place to Work Committee for which Jiggetts was the chairperson.

54.     On July 9, 2014, Jiggetts filed the unsigned 2013 performance evaluation and the addendum with DC Superior Court Human Resources Division.

55.     On July 18, 2014, Jiggetts filed a grievance with the Clerk of the Court concerning Cipullo's conduct.

56.     Jiggetts filed this grievance as a result of Cipullo's disparate treatment towards her, including but not limited to, the events surrounding her 2013 performance evaluation.

57.     The grievance Jiggetts filed on July 8, 2014, also included a complaint of a hostile work environment and a claim that Cipullo bullied Jiggetts.

58.     On or about July 23, 2014, the Clerk of the Court directed Jiggetts to file her claim with her direct supervisor, Cipullo.

59.     To comply with the Clerk of the Court's directive, Jiggetts filed her grievance with Cipullo.

60.     On July 31, 2014, Jiggetts met with Cipullo regarding her 2014 performance evaluation.

61.     During the July 31, 2014, meeting Cipullo admitted to Jiggetts that as a result of the prior year, he gave her low grades on the competency portion of her evaluation.

62.     During the July 31, 2014, meeting, Cipullo further admitted that in his first draft of Jiggetts' 2013 performance evaluation, he had given a two (2) out of a five (5) rating.

63.     On or about August 12, 2014, Jiggetts received Cipullo's reply to her grievance.

64.     Based on Cipullo's response to her grievance, on August 15, 2014, Jiggetts refiled the grievance she originally filed on July 18, 2014, with the Clerk of the Court.

65.     When Cipullo learned that Jiggetts' **h**ad filed a grievance with the Clerk of the Court, he responded with the following statement "If she wants war, we can go to war."

66.     Subsequent to the date Jiggetts filed her grievance with the Clerk of the Court, Cipullo engaged in a campaign of retaliatory actions against Jiggetts.

67.     On or about August 5, 2014, Jiggetts applied for coverage under the Family Medical Leave Act ("FMLA").

68.     FMLA coverage is authorized by the DC Superior Court Human Resources Division.

69.     FMLA is designed to protect an employee's position in order for the employee to care for a family member with a serious medical condition.

70.     On or about August 5, 2014, Jiggetts submitted the required paperwork and medical proof to the DC Superior Court Human Resources Division.

71.     The DC Superior Court Human Resources Division subsequently approved Jiggetts request for leave under FMLA.

72.     Jiggetts was granted leave under FMLA from August 20, 2014 to August 25, 2014.

73.     On August 26, 2014, Jiggetts commenced working on an intermittent basis.

74.     As a result of her approved leave under FMLA, Jiggetts did not work full-time.

75.     During the period of time that Jiggetts was on FMLA leave, Cipullo was fully aware that she was working on a reduced schedule.

76.     Cipullo was also aware that Jiggetts was working without the assistance of her only staff member, a law clerk, Angela Lee, who was also leave under FMLA.

77.     Although Cipullo was fully aware that Jiggetts was on leave under FMLA to care for a family member, he directed her to complete a number of assignments; including but not limited to, review and summary of new legislation; legal research concerning the District's "Gun Registry" for a senior manager even though the senior manager said it was not a "rush" job and Cipullo continually inquired with the senior manager whether Jiggetts had responded to the inquiry; preparation of a memorandum for the Judges on a fairly comprehensive new law and the impact that new law had on court operations and providing Cipullo with a summary and copy of all work product sent out over a two-week period, including emails, phone calls and telephone conferences scheduled for inmates in last two weeks; the steps involved in scheduling those hearings as well as the typical length of those hearings.

78.     In addition to Cipullo's directive to complete the above-noted assignments in a short period of time, Jiggetts continued to respond to inquiries concerning prisoner matters from judges, law clerks, attorneys, as well as courtroom clerks and other staff.

79.     Prior to the period of time between late August 2014 and September 2014, Jiggetts, had worked in the DC Superior Court Criminal Division for six (6) years, was not directed to provide all of her work product for any period of time to Cipullo or any other DC Superior Court Criminal Division personnel.

80.     On September 2, 2014, Jiggetts received the Clerk of the Court's reply to the grievance she resubmitted to him on August 15, 2014.

81.     In his reply, the Clerk of the Court asserted that there was no DC Superior Court written policy that dictates when a court employee' performance evaluation shall be released to a respective employee.

82.     The Clerk of the Court's statement was contrary to e-mails the DC Superior Court Human Resource's Division disseminated to court personnel.

83.     The emails disseminated by the DC Superior Court Human Resources Division specified certain deadlines regarding the completion and submission of the performance evaluations

84.     On September 22, 2014, solely as a result of the culmination of Cipullo's discriminatory, harassing, abusive and retaliatory conduct between August 2014 and September 2014, as described herein, Jiggetts filed an EEOC Charge of Discrimination.

85.     Jiggetts EEOC Charge of Discrimination contained, including but not limited to, the following allegations against Cipullo; race and gender discrimination, harassment, unfair labor practices and retaliation.

86.     Cipullo received a letter dated October 1, 2014, from Tiffany Adams-Moore, EEO Officer, DC Superior Court Human Resources Division, which informed him of the complaint Jiggetts had filed with the EEOC.

87.     On November 4, 2014, Jiggetts met with Cipullo to discuss halfway house placements.

88.     During the November 4, 2014, meeting, Cipullo acted in an irate and threatening manner towards Jiggetts.

89.     During the above-noted meeting, Cipullo yelled at Jiggetts and aggressively pounded his fists on the table.

90.     While Cipullo yelled at Jiggetts and aggressively pounded his fists on the table, Jiggetts observed spittle emanate from his mouth.

91.     Jiggetts felt threatened, harassed and feared for her safety and welfare solely as a result of Cipullo's conduct during the November 4, 2014.

92.     Solely because Jiggetts felt threatened, harassed and feared for her safety and welfare due to Cipullo's conduct during the November 4, 2014, meeting, she abruptly left the meeting.

93.     Jiggetts immediately reported Cipullo's conduct as described herein to the Acting Clerk of the Court, Dr. Cheryl Bailey ("Acting Clerk of the Court"), who, in October 2014, replaced the Clerk of the Court.

94.     The Acting Clerk of the Court's response to Jiggetts account of the events that occurred on November 4, 2014, was to caution her that walking out of a meeting with your supervisor could be deemed insubordination.

95.     Jiggetts then sought medical attention at the DC Superior Court nurse's office.

96.     Almost immediately after Cipullo sent the above-noted e-mail to Jiggetts, he rushed to her office and yelled and screamed at her.

97.     Cipullo's yelling and screaming caused Jiggetts to feel threatened by him, uncomfortable and she was afraid to be alone in her office with Cipullo particularly since he had just behaved in the same manner two days earlier.

98.     As a result, Jiggetts asked one of her colleagues to come into her office.

99.     In the presence of the above-noted colleague, Cipullo continued his tirade of yelling and screaming at Jiggetts.

100.    Jiggetts level of fear escalated and she attempted to leave her office.

101.    Cipullo, who was standing in the doorway of Jiggetts' office, held the door handle and refused to move from the doorway so that she could leave her office.

102.    Jiggetts asked Cipullo to move away from the door way three (3) times so that she could leave and he did not move.

103.    Finally, when Jiggetts asked Cipullo to move away from the door way a fourth time, he released the door handle at which time Jiggetts was able to exit her office.

104.    Jiggetts called court security and the police because she feared that Cipullo would harm her and she was afraid of what subsequent retaliatory action he would take against her.

105.    Subsequent to the above-noted incident with Cipullo, Jiggetts fear was elevated when she received another harassing e-mail from him.

106.    On November 6, 2014, Cipullo issued a Notice of Intention to Recommend a Five-Day Suspension to Jiggetts.

107.    As a basis for Jiggetts five-day suspension, Cipullo cited gross negligence and failure to obey directives.

108.    As a result of the events that occurred on November 6, 2014, Jiggetts sought medical attention and was under a doctor's care solely due to the trauma she suffered as a result of Cipullo's treatment of her during the November 6, 2014 meeting and when he unlawfully detained Jiggetts in her office.

109.    Jiggetts did not report to work from November 10 to November 17, 2014, for health-related reasons related to Cipullo's conduct.

110.    Jiggetts returned to work on November 17, 2014 and was confronted by the DC Superior Court Chief Security Officer, Parris, who was assigned to escort her out of the courthouse.

111.    As Parris escorted Jiggetts out of the courthouse, he grabbed her arm, twisted it behind her back and threw her into a wall.

112.    Parris caused injuries to Jiggetts.

113.    Jiggetts sought medical treatment for those injuries.

114.    Via letter dated December 2, 2014, Jiggetts contested Cipullo's recommendation for a five-day suspension and submitted a rebuttal to the allegations of gross negligence and failure to obey oral directives.

115.    Cipullo had his Deputy Director, Yvonne Martinez-Vega ("Martinez Vega"), retaliate against Jiggetts by increasing the five-day suspension to a recommendation for termination of employment.

116.    On December 23, 2014, two days before Christmas, Jiggetts received a Recommendation for Termination of Employment from Martinez-Vega.

117.    Martinez-Vega moved to terminate Jiggetts as a DC Superior Court Criminal Division Attorney-Advisor based on the same allegations cited by Cipullo in his suspension notice; gross negligence and failure to obey directives.

118.    Via letter dated January 26, 2015, Jiggetts contested Martinez-Vega's Recommendation for Termination for Employment.

119.    In the January 26, 2015 letter, Jiggetts refuted the allegations that formed the basis for Martinez-Vega's Recommendation for Termination of Employment.

120.    Via letter dated March 19, 2015, from the Acting Clerk of the Court, Jiggetts was terminated as a DC Superior Court Criminal Division Attorney-Advisor.

121.    On April 6, 2015, Jiggetts appealed the decision to terminate her employment as a DC Superior Criminal Division Attorney-Advisor and requested a hearing.

122.    Ann Wicks, the DC Superior Court's Executive Officer, has not scheduled the hearing on Jiggetts appeal of the decision to terminate her employment as a DC Superior Court Criminal Division Attorney-Advisor.

## COUNT I
## GENDER DISCRIMINATION IN VIOLATION OF TITLE
## VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

123.    Plaintiffs incorporate by reference paragraphs 1 through 122 as if fully set forth herein.

124.    At all relevant times herein, Jiggetts was a member of a protected class in her capacity as a female DC Superior Court employee, specifically an Attorney-Advisor with the Criminal Division.

125.    Cipullo withheld Jiggetts' 2013 performance evaluation for over one-year without cause or justification.

126.    Solely as a result of Cipullo withholding Jiggetts' 2013 performance evaluation for over one-year, Jiggetts was precluded from applying for other open positions with the DC Superior Court in violation of Title VII of the Civil Rights Act of 1964, as amended.

127.    Cipullo thwarted Jiggetts efforts to transfer to another DC Superior Court Division in his capacity as a selection panel member.

128.     Cipullo thwarted Jiggetts efforts to transfer to another DC Superior Court Division when he spoke negatively about Jiggetts to other DC Superior Court directors.

129.    Cipullo thwarted Jiggetts from filling a DC Superior vacancy or transferring to another DC Superior Court Division and as a result he violated Title VII of the Civil Rights Act of 1964, as amended.

130.    When Cipullo conducted the meeting on November 4, 2014, yelled at Jiggetts and pounded on the table, the manner in which he acted and treated Jiggetts is in violation of Title VII of the Civil Rights Act of 1964, as amended.

131.    When Cipullo issued his November 6, 2014, Notice of Intention to Recommend a Five-Day Suspension he initiated a disciplinary process against Jiggetts in violation of Title VII of the Civil Rights Act of 1964, as amended.

132.    Cipullo's issuance of his Notice of Intention to Recommend a Five-Day Suspension precipitated a Recommendation for Termination of Employment, which resulted in Jiggetts' being terminated effective April 4, 2015, as an Attorney Advisor with the DC Superior Court Criminal Division in violation of Title VII of the Civil Rights Act of 1964, as amended.

133.    Cipullo was predisposed to treat DC Superior Court African-American female employees with advanced degrees differently than those employees who were Caucasian males, Caucasian females and employees with less education in violation of Title VII of the Civil Rights Act of 1964, as amended.

134.    Specifically, Cipullo treated African-American women with advanced degrees in a discriminatory and hostile manner.

135.    Cipullo viewed a DC Superior Court employees' race and gender as problematic in violation of Title VII of the Civil Rights Act of 1964, as amended.

136.    Cipullo is liable for the violation of Jiggetts right pursuant to Title VII of the Civil Rights Act of 1964, as amended.

137.    Solely as a direct and proximate result of Cipullo's unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended against Jiggetts, she has suffered and continues to suffer severe pain and emotional distress.

138.    Cipullo's conduct as described herein was malicious and done with conscious disregard for Jiggetts' federally protected rights.

139.    Numerous DC Superior Court executive officials were fully aware of Cipullo's malicious, willful and wrongful, arbitrary, discriminatory, hostile and retaliatory conduct, yet these officials did not take any action to prohibit Cipullo from engaging in said conduct against Jiggetts in violation of Title VII of the Civil Rights Act of 1964, as amended.

140.    Solely as a direct and proximate cause of Cipullo's malicious, willful and wrongful, arbitrary, discriminatory, hostile and retaliatory conduct and unlawful and wrongful treatment of Jiggetts, adverse action was taken against her as precipitated by Cipullo.

141.    Jiggetts was suspended then terminated as a DC Superior Court Attorney Advisor with the Criminal Division.

142.    Jiggetts has been injured economically and emotionally due to Cipullo's conduct.

**COUNT II**
**RACE DISCRIMINATION IN VIOLATION OF TITLE VII**
**OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED**

143.    Plaintiffs incorporate by reference paragraphs 1 through 142 as if fully set forth herein.

144.    At all relevant times herein, Jiggetts was a member of a protected class in her capacity as a female African-American DC Superior Court employee, specifically an Attorney-Advisor with the Criminal Division.

145.    Cipullo withheld Jiggetts' 2013 performance evaluation for over one-year without cause or justification.

146.     Solely as a result of Cipullo withholding Jiggetts' 2013 performance evaluation for over one-year, Jiggetts was precluded from applying for other open positions with the DC Superior Court in violation of Title VII of the Civil Rights Act of 1964, as amended.

147.     Cipullo thwarted Jiggetts efforts to transfer to another DC Superior Court Division in his capacity as a selection panel member.

148.      Cipullo thwarted Jiggetts efforts to transfer to another DC Superior Court Division when he spoke negatively about Jiggetts to other DC Superior Court directors**.**

149.     Cipullo thwarted Jiggetts from filling a DC Superior vacancy or transferring to another DC Superior Court Division and as a result he violated Title VII of the Civil Rights Act of 1964, as amended.

150.     When Cipullo conducted the meeting on November 4, 2014, yelled at Jiggetts and pounded on the table, the manner in which he acted and treated Jiggetts is in violation of Title VII of the Civil Rights Act of 1964, as amended.

151.     When Cipullo issued his November 6, 2014, Notice of Intention to Recommend a Five-Day Suspension he initiated a disciplinary process against Jiggetts in violation of Title VII of the Civil Rights Act of 1964, as amended.

152.     Cipullo's issuance of his Notice of Intention to Recommend a Five-Day Suspension precipitated a Recommendation for Termination of Employment, which resulted in Jiggetts' being terminated effective April 4, 2015, as an Attorney Advisor with the DC Superior Court Criminal Division in violation of Title VII of the Civil Rights Act of 1964, as amended.

153.     Cipullo was predisposed to treat DC Superior Court African-American female employees with advanced degrees differently than Caucasian males or Caucasian females with less education in violation of Title VII of the Civil Rights Act of 1964, as amended.

154.    In 2010 or 2011, Cipullo created a program manager position at a grade GS-14, for a Caucasian employee who neither had an advanced degree nor a college degree.

155.    The DC Superior Court program manager while programming the DC Superior Court's database, named Court View, caused the system to crash court-wide for all divisions.

156.    After the program manager caused the Court View system to crash, upon information and belief, this employee had her privileges revoked and the DC Superior Court's Information Technology staffed directed the program manager not to conduct any more programming on the Court View system.

157.    The afore-mentioned program manager was neither disciplined nor suspended for causing the Court View system to crash court-wide.

158.    Specifically, Cipullo treated African-American women with advanced degrees in a discriminatory and hostile manner as compared to the Program Manager who is Caucasian.

159.    Cipullo viewed a DC Superior Court employees' race and gender as problematic in violation of Title VII of the Civil Rights Act of 1964, as amended.

160.    Cipullo is liable for the violation of Jiggetts right pursuant to Title VII of the Civil Rights Act of 1964, as amended.

161.    Solely as a direct and proximate result of Cipullo's unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended against Jiggetts, she has suffered, and continues to suffer severe pain and suffering, mental anguish and emotional distress.

162.    Cipullo's conduct as described herein was malicious and done with conscious disregard for her federally protected rights.

163.    Numerous DC Superior Court executive officials were fully aware of Cipullo's malicious, willful and wrongful, arbitrary, discriminatory, hostile and retaliatory conduct, yet these

officials did not take any action to prohibit Cipullo from engaging in said conduct against Jiggetts in violation of Title VII of the Civil Rights Act of 1964, as amended.

164.    Solely as a direct and proximate cause of Cipullo's malicious, willful and wrongful, arbitrary, discriminatory, hostile and retaliatory conduct and unlawful and wrongful treatment of Jiggetts, adverse action was taken against her as precipitated by Cipullo.

165.    Jiggetts was suspended then terminated as a DC Superior Court Attorney Advisor with the Criminal Division.

166.    Jiggetts has been injured economically and emotionally due to Cipullo's conduct.

**Count III**
**HUMAN RIGHTS ACT VIOLATIONS**
**Pursuant to §§ 2-1402.11 and 2-1402.61**
**Against Cipullo**

167.    Plaintiffs incorporate by reference paragraphs 1 through 166 as if fully set forth herein.

168.    Cipullo engaged in an unlawfully discriminatory practice against Jiggetts when he discriminatorily interfered with the conditions, terms, and privileges of her employment based on her race, color, actual or perceived race and gender.

169.    Cipullo's failure to provide Jiggetts with her 2013 performance evaluation, precluded her from applying for any DC Superior Court vacancies because an applicant is required to submit their most recent performance evaluation when applying for a vacant position.

170.    Jiggetts was the only employee at DC Superior Court who did not receive her 2013 performance evaluation in a timely manner.

171.    Jiggetts made efforts to transfer to another division in the DC Superior Court but Cipullo sabotaged her efforts to transfer to another DC Superior Court Division as a member of the section panel and he would speak negatively about Jiggetts to other directors.

172.    Once Jiggetts received her performance evaluation she refused to sign it because the evaluation was inaccurate and the scores portrayed her in a negative light.

173.    Instead she filed the performance evaluation with an addendum correcting the inaccuracies.

174.    Jiggetts was directed to file a grievance directly with Cipullo and he told her that she was given a lower grade as a result of their dispute the prior year.

175.    Cipullo learned that Jiggetts had filed a grievance with the Clerk of the Court and he responded by saying, "if she wants war, we can go to war."

176.    Jiggetts applied and was approved for leave under FMLA and as a result reduced her work schedule.

177.    Cipullo was fully aware of Jiggetts reduced work schedule but directed her to complete a number of assignments.

178.    Cipullo was fully aware that Jiggetts would not be able to complete the assignments based on her reduced schedule.

179.    Jiggetts filed an EEOC complaint against Cipullo and he received notice of the complaint via a letter dated October 1, 2014.

180.    During subsequent work meetings, Cipullo, on more than one occasion, acted in an irate and threatening manner towards Jiggetts.

181.    On one occasion Cipullo yelled at Jiggetts while aggressively pounding his fists on the table.

182.    Jiggetts removed herself from the meeting out of fear for her safety and well-being.

183.    On November 6, 2014, Cipullo sent an email to Mrs. Jiggetts.

184.    After Cipullo sent the e-mail, he immediately rushed to Jiggetts office to yell and scream at her.

185.    Jiggetts felt threatened and uncomfortable and asked a colleague to come into the office so she would not be alone with Cipullo.

186.    Jiggetts attempted to remove herself from the office but Cipullo stood in front of the door way and prevented her from leaving her office despite multiple requests.

187.    Mr. Cipullo's tirade, harassment and hostility toward Mrs. Jiggetts culminated in his recommendation that she be suspended for five days.

188.    Jiggetts returned to work on November 17, 2014 and she was confronted by court security who physically and aggressively grabbed her arm, twisted it behind her back and threw her into a wall.

189.    Jiggetts was injured as a result of being assaulted by the security officer when he threw her into the wall.

190.    Jiggetts sought medical treatment for the injury to her arm/shoulder.

191.    Cipullo's recommendation for a five day suspension escalated to a recommendation for termination on December 23, 2014.

192.    Effective April 4, 2015, Jiggetts was terminated from her employment as a DC Superior Court Criminal Division Attorney Advisor.

193.    As a direct and proximate result of the illegal employment discrimination and retaliation, Mrs. Jiggetts suffered and continues to suffer severe pain and suffering, and emotional distress as well as loss of earnings and other employment benefits and job opportunities.

194.    Cipullo is liable for the human rights violations he committed against Jiggetts.

195.     Numerous DC Superior Court executive officials were fully aware of Cipullo's malicious, willful and wrongful, arbitrary, discriminatory, hostile and retaliatory conduct, yet these officials did not take any action to prohibit Cipullo from engaging in said conduct against Jiggetts in violation of Title VII of the Civil Rights Act of 1964, as amended.

196.     Solely as a direct and proximate cause of Cipullo's malicious, willful and wrongful, arbitrary, discriminatory, hostile and retaliatory conduct and unlawful and wrongful treatment of Jiggetts, adverse action was taken against her as precipitated by Cipullo.

197.     Jiggetts was suspended then terminated as a DC Superior Court Atttorney Advisor with the Criminal Division.

198.     Jiggetts has been injured economically and emotionally due to Cipullo's conduct.

**COUNT IV**
**HUMAN RIGHTS ACT VIOLATIONS**
**PURSUANT TO §§ 2-1402.11 and 2-1402.61**
**AGAINST DEFENDANT DISTRICT OF COLUMBIA**

199.     Plaintiffs incorporate by reference paragraphs 1 through 198 as if fully set forth herein.

200.     Cipullo engaged in an unlawfully discriminatory practice against Jiggetts when he discriminatorily interfered with the conditions, terms, and privileges of her employment based on her race, color, actual or perceived race and gender.

201.     Cipullo's failure to provide Jiggetts with her 2013 performance evaluation, precluded her from applying for any DC Superior Court vacancies because an applicant is required to submit their most recent performance evaluation when applying for a vacant position.

202.     Jiggetts was the only employee at DC Superior Court who did not receive her 2013 performance evaluation in a timely manner.

203.     Jiggetts made efforts to transfer to another division in the DC Superior Court but Cipullo sabotaged her efforts to transfer to another DC Superior Court Division as a member of the section panel and he would speak negatively about Jiggetts to other directors.

204.     Once Jiggetts received her performance evaluation she refused to sign it because the evaluation was inaccurate and the scores portrayed her in a negative light.

205.     Instead she filed the performance evaluation with an addendum correcting the inaccuracies.

206.     Jiggetts was directed to file a grievance directly with Cipullo and he told her that she was under-graded as a result of their dispute.

207.     Cipullo learned that Jiggetts had filed a grievance with the Clerk of the Court and he responded by saying, "if she wants war, we can go to war."

208.     Jiggetts applied and was approved for leave under FMLA and as a result reduced her work schedule.

209.     Cipullo was fully aware of Jiggetts reduced work schedule but directed her to complete a number of assignments.

210.     Cipullo was fully aware that Jiggetts would not be able to complete the assignments based on her reduced schedule.

211.     Jiggetts filed an EEOC complaint against Cipullo and he received notice of the complaint via letter dated October 1, 2014.

212.     During subsequent work meetings, Cipullo, on more than one occasion, acted in an irate and threatening manner towards Jiggetts.

213.     On one occasion Cipullo yelled at Jiggetts while aggressively pounding his fists on the table.

214.    Jiggetts removed herself from the meeting out of fear for her safety and well-being.

215.    On November 6, 2014, Cipullo sent an email to Mrs. Jiggetts.

216.    After Cipullo sent the e-mail, he immediately rushed to Jiggetts office to yell and scream at her.

217.    Jiggetts felt threatened and uncomfortable and asked a colleague to come into the office so she would not be alone with Cipullo.

218.    Jiggetts attempted to remove herself from the office but Cipullo stood in front of the door way and prevented her from leaving her office despite multiple requests.

219.    Mr. Cipullo's tirade, harassment and hostility toward Mrs. Jiggetts culminated in his recommendation that she be suspended for five days.

220.    Jiggetts returned to work on November 17, 2014 and she was confronted by court security who physically and aggressively grabbed her arm, twisted it behind her back and threw her into a wall.

221.    Jiggetts was injured as a result of being assaulted by the security officer when he threw her into the wall.

222.    Jiggetts sought medical treatment for the injury to her arm/shoulder.

223.    Cipullo's recommendation for a five day suspension escalated to a recommendation for termination on December 23, 2014.

224.    Effective April 4, 2015, Jiggetts was terminated from her employment as a DC Superior Court Criminal Division Attorney Advisor.

225.    As a direct and proximate result of the illegal employment discrimination and retaliation, Mrs. Jiggetts suffered and continues to suffer severe pain and emotional distress as well as loss of earnings and other employment benefits and job opportunities.

226. At all times relevant herein, Cipullo was acting within the scope of his employment for defendant District of Columbia.

227. At all times relevant herein, Cipullo was acting under the direction, control and benefit of defendant District of Columbia.

228. At all times relevant herein, Cipullo was acting on behalf of and in the interest of his employer defendant District of Columbia.

229. Defendant District of Columbia is liable for the human rights violations Cipullo committed against Jiggetts while he was acting within the scope of his employment for defendant District of Columbia.

230. Numerous DC Superior Court executive officials were fully aware of Cipullo's malicious, willful and wrongful, arbitrary, discriminatory, hostile and retaliatory conduct, yet these officials did not take any action to prohibit Cipullo from engaging in said conduct against Jiggetts in violation of Title VII of the Civil Rights Act of 1964, as amended.

231. Solely as a direct and proximate cause of Cipullo's malicious, willful and wrongful, arbitrary, discriminatory, hostile and retaliatory conduct and unlawful and wrongful treatment of Jiggetts, adverse action was taken against her as precipitated by Cipullo.

232. Jiggetts was suspended then terminated as a DC Superior Court Attorney Advisor with the Criminal Division.

233. Jiggetts has been injured economically and emotionally due to Cipullo's conduct.

## COUNT V
## HOSTILE WORK ENVIRONMENT

234. Plaintiffs incorporate by reference paragraphs 1 through 233 as if fully set forth herein.

235.     After Jiggetts filed her grievance on August 15, 2014, Cipullo stated "If she wants war, we can go to war" and as a result he created a racially hostile and abusive work environment in violation of Title VII of the Civil Rights Act of 1965, as amended.

236.     Cipullo made efforts to bully Jiggetts to withdraw her grievance and as a result he created a racially hostile and abusive work environment in violation of Title VII of the Civil Rights Act of 1965, as amended.

237.     Cipullo directed Jiggetts to complete a number of assignments, specifically while she was on FMLA and as a result he created a racially hostile and abusive work environment in violation of Title VII of the Civil Rights Act of 1965, as amended.

238.     Cipullo assigned the afore-mentioned work to Jiggetts while she was on FMLA leave and her assistant was on FMLA leave and as a result he created a racially hostile and abusive work environment in violation of Title VII of the Civil Rights Act of 1965, as amended.

239.     When Cipullo yelled at Jiggetts and pounded on the desk during the November 4, 2014, meeting, he created a racially hostile and abusive work environment in violation of Title VII of the Civil Rights Act of 1965, as amended.

240.     Jiggetts felt threatened, harassed and feared for her safety and welfare as a result of Cipullo's conduct during the November 4, 2014, meeting and as a result he created a racially hostile and abusive work environment in violation of Title VII of the Civil Rights Act of 1965, as amended.

241.     Cipullo would routinely scream at, intimidate or manipulate DC Superior Court Criminal Division personnel for his benefit, including on several occasions, when his conduct reduced an employee to tears, which contributed to a hostile and abusive work environment in violation of Title VII of the Civil Rights Act of 1965, as amended.

242.    On several occasions, Cipullo had used gender specific profanity to describe women at DC Superior Court.

243.    On several occasions, Cipullo has used gender specific profanity in talking about female African-American personnel in the DC Superior Court Criminal Division at DC Superior Court.

244.    Dan Cipullo has been recorded on videotape acting in an inappropriate and sexually suggestive manner in the presence of a group of people, including female African-American Criminal Division personnel at DC Superior Court.

245.    Cipullo repeatedly demeaned Jiggetts in numerous e-mails and as a result he created a racially hostile and abusive work environment in violation of Title VII of the Civil Rights Act of 1965, as amended.

246.    Cipullo repeatedly criticized Jiggetts' work in numerous e-mails to Jiggetts and disseminated those e-mail to other DC Superior Court employees and as a result, he created a racially hostile and abusive work environment in violation of Title VII of the Civil Rights Act of 1965, as amended.

247.    Cipullo conducted a campaign to create a hostile work environment by directing Jiggetts to provide a detailed summary of all of the work she completed during a two-week period of time and as a result he created a racially hostile and abusive work environment in violation of Title VII of the Civil Rights Act of 1965, as amended.

248.    After Jiggetts painstakingly prepared the detailed summary of all of the work she completed during a two-week period of time and provided that summary to Cipullo, he requested all of Jiggetts work-product, such as emails and correspondence, during the same period of time.

249.    Cipullo directed Jiggetts to provide all of her work product subsequent to the time she previously provided the work summary and as a result he created a racially hostile and abusive work environment in violation of Title VII of the Civil Rights Act of 1965, as amended.

250.    Cipullo inundated Jiggetts with e-mails and directed her to complete fictitious work in order to detract her from being able to complete her other responsibilities.

251.    In the month of October 2014, Cipullo and Martinez-Vega sent Jiggetts fifty-nine e-mails as compared to the month of October 2013, when Jiggetts only received a total of ten (10) e-mails from Cipullo and Martinez-Vega.

252.    Cipullo's conduct as noted as noted above created a racially hostile and abusive work environment in violation of Title VII of the Civil Rights Act of 1965, as amended.

253.    On November 6, 2014 Cipullo went to Jiggetts' office and began yelling and screaming at her.

254.    During Cipullo's hostile rage on November 6, 2014, he blocked Jiggetts ability to leave her office by obstructing the door way.

255.    Jiggetts attempted to leave her office and politely asked Cipullo four (4) times to move away from the door way to her office so she could leave and he refused.

256.     Cipullo's conduct as noted above created a racially hostile and abusive work environment in violation of Title VII of the Civil Rights Act of 1965, as amended by falsely imprisoning Jiggetts.

257.    Cipullo would not permit Jiggetts to leave her office on November 6, 2014, and as a result he created a racially hostile and abusive work environment in violation of Title VII of the Civil Rights Act of 1965, as amended.

258.    Cipullo moved to suspend Jiggetts for five days after all of the events that occurred between August 2014 and November 2014, and he created a racially hostile and abusive work environment in violation of Title VII of the Civil Rights Act of 1965, as amended.

259.    Cipullo had his Deputy, Martinez Vega modify the five (5) day suspension to termination in a letter received by Jiggetts on December 23, 2014.

260.    Cipullo was predisposed to treat DC Superior Court African-American female employees with advanced degrees differently than those employees with less education or Caucasian male or female employees in violation of Title VII of the Civil Rights Act of 1964, as amended.

261.    Cipullo has previously treated African-American women with advanced degrees in a discriminatory and hostile manner.

262.    Upon information and belief, Cipullo would not allow Jiggetts to transfer to another DC Superior Court Division, but he would allow or facilitate others to transfer to another division.

263.    Cipullo viewed a DC Superior Court employees' race and gender as problematic in violation of Title VII of the Civil Rights Act of 1964, as amended.

264.    Solely as a direct and proximate cause of Cipullo's conduct towards Jiggetts as described herein, Jiggetts was subjected to laboring under a hostile work environment.

265.    Solely as a direct and proximate cause of Cipullo's conduct towards Jiggetts as Title VII of the Civil Rights Act of 1965, as amended described herein, Jiggetts has suffered and continues to suffer severe pain and suffering, extreme mental anguish and emotional distress.

266.    Cipullo's conduct as described herein was malicious and done with conscious disregard for her federally protected rights.

267.    Numerous DC Superior Court executive officials were fully aware of Cipullo's malicious, willful and wrongful, arbitrary, discriminatory, hostile and retaliatory conduct, yet these officials did not take any action to prohibit Cipullo from engaging in said conduct against Jiggetts in violation of Title VII of the Civil Rights Act of 1964, as amended.

268.    Solely as a direct and proximate cause of Cipullo's malicious, willful and wrongful, arbitrary, discriminatory, hostile and retaliatory conduct and unlawful and wrongful treatment of Jiggetts, adverse action was taken against her as precipitated by Cipullo.

269.    Jiggetts was suspended then terminated as a DC Superior Court Atttorney Advisor with the Criminal Division.

270.    Jiggetts has been injured economically and emotionally due to Cipullo's conduct.

## COUNT VI
## RETALIATION

271.    Plaintiffs incorporate by reference paragraphs 1 through 270 as if fully set forth herein.

272.    At all relevant times herein, Jiggetts was a member of a protected class in her capacity as a female African-American DC Superior Court employee, specifically an Attorney-Advisor with the Criminal Division.

273.    On August 15, 2014, Jiggetts filed a grievance with the Clerk of the Court because she did not timely receive her 2013 performance evaluation from Cipullo.

274.    Jiggetts received her performance evaluation from Cipullo one-year after the date it should have been provided to her.

275.    After Cipullo learned that Jiggetts filed her grievance with Mr. Delaney on August 15, 2014, he stated "If she wants to go to war, we can go to war."

276.    Cipullo made efforts to coerce Jiggetts to withdraw her grievance.

277.    When Jiggetts did not withdraw her grievance, he directed her to complete numerous assignments within a short period of time while on FMLA leave from August 20 to August 25, 2014.

278.    Solely as a result of the culmination of the events that occurred between August 2014 and September 2014 due to Cipullo's discriminatory, harassing and abusive conduct towards Jiggetts, on September 22, 2014, Jiggetts filed an EEOC complaint.

279.    On or about October 2014, Cipullo received a letter from Gloria Trotman, DC Superior Court Human Resources Director, which informed him of the EEOC complaint Jiggetts filed with the EEOC.

280.    Upon information and belief, Cipullo would not allow Jiggetts to transfer to another DC Superior Court Division, but he would allow or facilitate others to transfer to another division.

281.    On November 4, 2014, during a meeting with Jiggetts, Cipullo admitted to Jiggetts that he gave her a lower grade in the competency portion of her performance evaluation due to a prior dispute with her.

282.    During this meeting, Cipullo yelled at Jiggetts, aggressively pounded his fists on the table and Jiggetts observed spit emanate from Cipullo's mouth.

283.    On November 6, 2014, Cipullo sent an e-mail to Jiggetts, immediately thereafter he rushed to her office and screamed and yelled at her.

284.    As Cipullo continued to scream and yell at Jiggetts, she tried to leave her office, but Cipullo blocked her ability to depart her office by obstructing the door way.

285.    Jiggetts attempted to leave her office and politely asked Cipullo to move away from the door way four (4) times so that she could leave her office and he refused.

286.    As a result of Cipullo's conduct as described herein, he falsely imprisoned Jiggetts.

287.    On November 6, 2014, Cipullo issued a Notice of Intention to Recommend a Five-Day Suspension.

288.    Cipullo had his Deputy Martinez Vega increase the five (5) day suspension to a recommendation for termination of employment.

289.    Effective April 4, 2015, Jiggetts was terminated as a DC Superior Court Criminal Division Attorney-Advisor.

290.    As a result of Cipullo's barrage of work, disparaging e-mails and his tirades during meetings, Cipullo unlawfully retaliated against Jiggetts as a result of the grievance she filed with the Clerk of the Court in violation of Title VII of the Civil Rights Act of 1964, as amended.

291.    Cipullo unlawfully retaliated against Jiggetts because she filed an EEOC complaint on September 22, 2014, he subsequently issued the five-day suspension notice, followed by the termination recommendation as well as Jiggetts termination from her employment effective April 4, 2015, as a DC Superior Court Criminal Division Attorney Advisor in violation of Title VII of the Civil Rights Act of 1964, as amended.

292.    Solely as a direct and proximate cause of Cipullo's conduct towards Jiggetts as described herein in violation of Title VII of the Civil Rights Act of 1965, as amended, Jiggetts has suffered and continues to suffer severe pain and emotional distress.

293.    Cipullo's conduct as described herein was malicious and done with conscious disregard for her federally protected rights.

294.    Cipullo is liable for the retaliatory conduct in which he engaged against Jiggetts.

295.    Numerous DC Superior Court executive officials were fully aware of Cipullo's malicious, willful and wrongful, arbitrary, discriminatory, hostile and retaliatory conduct, yet these

officials did not take any action to prohibit Cipullo from engaging in said conduct against Jiggetts in violation of Title VII of the Civil Rights Act of 1964, as amended.

296.     Solely as a direct and proximate cause of Cipullo's malicious, willful and wrongful, arbitrary, discriminatory, hostile and retaliatory conduct and unlawful and wrongful treatment of Jiggetts, adverse action was taken against her as precipitated by Cipullo.

297.     Jiggetts was suspended then terminated as a DC Superior Court Atttorney Advisor with the Criminal Division.

298.     Jiggetts has been injured economically and emotionally due to Cipullo's conduct.

## COUNT VII
## FALSE IMPRISONMENT AGAINST CIPULLO

299.     Plaintiffs incorporate by reference paragraphs 1 through 298 as if fully set forth herein.

300.     On November 6, 2014, Cipullo transmitted an e-mail to Jiggetts.

301.     Almost immediately after Cipullo sent above-noted e-mail to Jiggetts, he rushed to her office and yelled and screamed at her.

302.     Cipullo's yelling and screaming caused Jiggetts to feel threatened by him, uncomfortable and she was afraid to be alone in her office with Cipullo.

303.     As a result, Jiggetts asked one of her colleagues to come into her office.

304.     In the presence of the above-noted colleague, Cipullo continued his tirade of yelling and screaming at Jiggetts.

305.     Jiggetts level of fear escalated and she attempted to leave her office.

306.     Cipullo, who was standing in the doorway of Jiggetts' office, refused to move from the doorway so that Jiggetts could leave her office.

307.    Jiggetts asked Cipullo to move away from the door way three (3) times and he did not move.

308.    Finally, when Jiggetts asked Cipullo to move away from the door way a fourth time, he moved and Jiggetts was able to exit her office.

309.    Cipullo purposefully obstructed Jiggetts ability leave her office in order to continue his tirade of yelling and screaming at her.

310.    Cipullo did not honor Jiggetts four requests for him to move away from the door way so that she could leave her office.

311.    Cipullo impeded Jiggetts efforts to leave her office against her will.

312.    Cipullo impeded Jiggetts efforts without her consent.

313.    Cipullo blocked the door way of Jiggetts office and obstructed her ability to leave her office when she had not engaged in any conduct to warrant his actions denying Jiggetts the ability to leave her office.

314.    Cipullo blocked the door way of Jiggetts office and obstructed her ability to leave her office absent a valid, lawful basis for denying Jiggetts the ability to leave her office.

315.    Cipullo is responsible for unlawfully detaining Jiggetts in her office absent a valid, lawful basis for that detention.

316.    Numerous DC Superior Court executive officials were fully aware of Cipullo's malicious, willful and wrongful, arbitrary, discriminatory, hostile and retaliatory conduct, yet these officials did not take any action to prohibit Cipullo from engaging in said conduct against Jiggetts in violation of Title VII of the Civil Rights Act of 1964, as amended.

317.    Solely as a direct and proximate cause of Cipullo's malicious, willful and wrongful, arbitrary, discriminatory, hostile and retaliatory conduct and unlawful and wrongful treatment of Jiggetts, adverse action was taken against her as precipitated by Cipullo.

318.    Jiggetts was suspended then terminated as a DC Superior Court Atttorney Advisor with the Criminal Division.

319.    Jiggetts has been injured economically and emotionally due to Cipullo's conduct.

## COUNT VIII
## (VICARIOUS LIABILITY-FALSE IMPRISONMENT)
## (AGAINST DEFENDANT DISTRICT OF COLUMBIA)

320.    Plaintiff incorporates by reference paragraphs 1 through 319 as fully set forth herein.

321.    At all times relevant herein, Cipullo was acting within the scope of his employment for defendant District of Columbia.

322.    At all times relevant herein, Cipullo was acting under the direction, control and benefit of defendant District of Columbia.

323.    Defendant District of Columbia is liable for Cipullo's willful and unlawful detention of Jiggetts on November 6, 2014, while he was acting within the scope of his employment for defendant District of Columbia.

324.    Defendant District of Columbia is vicariously liable for Cipullo's false imprisonment of Jiggetts on November 6, 2014.

## COUNT IX
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS-CIPULLO

325.    Plaintiffs incorporate by reference paragraphs 1 through 324 as if fully set forth herein.

326.    Cipullo intentionally withheld Jiggetts 2013 performance evaluation, which caused her emotional distress because Cipullo's actions precluded her from applying for other DC Superior Court vacancies.

327.    The malicious, negative comments and low performance score Cipullo included in Jiggetts' 2013 performance evaluation caused her emotional distress on an ongoing basis because Cipullo's actions precluded her from applying for other DC Superior Court vacancies.

328.    In the 2013 performance evaluation Cipullo prepared for Jiggetts he did not accurately reflect her performance as a DC Superior Court Attorney Advisor with the Criminal Division which caused her stress and distress because of the inaccuracies.

329.    In the 2013 performance evaluation Cipullo prepared for Jiggetts he did not accurately reflect her performance as a DC Superior Court Attorney Advisor with the Criminal Division which caused her emotional distress on an ongoing basis because the poor and negative evaluation inaccurately portrayed her performance which would affect her overall employment prospects within DC Superior Court.

330.    In the 2013 performance evaluation Cipullo prepared for Jiggetts he did not accurately reflect her performance as a DC Superior Court Attorney Advisor with the Criminal Division which caused her emotional distress on an ongoing basis because the poor and negative evaluation inaccurately portrayed her performance which would affect her overall employment prospects for an employer other than DC Superior Court.

331.    Cipullo maliciously and willfully relayed negative information about Jiggetts to other DC Superior Court directors and other personnel which hindered her ability to transfer to another DC Superior Court Division.

332.    Cipullo's conduct as described above caused Jiggetts emotional distress on an ongoing basis because his conduct restricted her from transferring to another DC Superior Court Division.

333.    Cipullo's negative and willful constant barrage of e-mails to Jiggetts while she was on FMLA leave caused Jiggetts emotional distress on an ongoing basis because his conduct impeded her ability to fulfill her other duties and obligations in her capacity as a DC Superior Court Attorney Advisor with the Criminal Division.

334.    Cipullo's directive for Jiggetts to complete numerous assignment in a short period of time when he was fully aware that she would not be able to complete said assignments caused Jiggetts emotional distress on an ongoing basis because it impeded her ability to fulfill her other obligations as a DC Superior Court Attorney Advisor with the Criminal Division.

335.    Cipullo's request for Jiggetts to produce all of her work product during a specific period of time designated by him caused Jiggetts emotional distress on an ongoing basis because it impeded her ability to fulfill her other obligations as a DC Superior Court Attorney Advisor with the Criminal Division.

336.    Cipullo maliciously and willfully sought to impede Jiggetts' ability fulfill her other obligations as a DC Superior Court Attorney Advisor with the Criminal Division which caused her to suffer from emotional distress on an ongoing basis.

337.    Jiggetts suffered emotional distress on an ongoing basis solely as a result of Cipullo's ongoing disparagement of Jiggetts' performance and productivity in her capacity as a DC Superior Court Attorney Advisor with the Criminal Division.

338.    Jiggetts suffered emotional distress on an ongoing basis solely as a result of Cipullo's tirades yelling and screaming at her.

339.    Jiggetts suffered emotional distress on an ongoing basis solely as a result of Cipullo's tirades, including but not limited to, pounding his fists on a table during the November 4, 2014 meeting.

340.    Jiggetts suffered emotional distress on an ongoing basis solely as a result of Cipullo falsely imprisoning Jiggetts in her office.

341.    Jiggetts suffered emotional distress on an ongoing basis solely as a result of Cipullo all of the threats and menacing conduct he direct towards Jiggetts.

342.    Jiggetts suffered emotional distress on an ongoing basis solely as a result of Cipullo because, as described herein, she had to labor under a hostile work environment.

343.    Jiggetts suffered emotional distress on an ongoing basis solely as a result of Cipullo's action issuing a suspension notice as a result of the grievance she filed with the Clerk of the Court on August 15, 2014.

344.    Jiggetts suffered emotional distress on an ongoing basis solely as a result of the escalation of the suspension notice to a recommendation for termination which was precipitated by Cipullo.

345.    Jiggetts suffered emotional distress on an ongoing basis due to the engagement of Parris' aggressive and physical conduct towards her and his subsequent assaultive conduct.

346.    Jiggetts suffered emotional distress on an ongoing basis solely as a result of her termination, effective April 4, 2015, as a DC Superior Court Attorney Advisor with the Criminal Division which was precipitated by Cipullo.

347.    Jiggetts suffered emotional distress on an ongoing basis because numerous DC Superior Court executive officials were fully aware of Cipullo's malicious, willful and wrongful,

arbitrary, discriminatory, hostile and retaliatory conduct, yet these officials did not take any action to prohibit Cipullo from engaging in said conduct against Jiggetts.

348.    Solely as a direct and proximate cause of Cipullo's malicious, willful and wrongful, arbitrary, discriminatory, hostile and retaliatory conduct and unlawful and wrongful treatment of Jiggetts, adverse action was taken against her as precipitated by Cipullo.

349.    Jiggetts was suspended then terminated as a DC Superior Court Attorney Advisor with the Criminal Division.

350.    Jiggetts has suffered emotional distress on an ongoing basis as a result of her termination as a DC Superior Court Attorney Advisor with the Criminal Division.

## COUNT X
### (VICARIOUS LIABILITY-INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS) (AGAINST DEFENDANT DISTRICT OF COLUMBIA)

351.    Plaintiff incorporates by reference paragraphs 1 through 350 as fully set forth herein.

352.    At all times relevant herein, Cipullo was acting within the scope of his employment for defendant District of Columbia.

353.    At all times relevant herein, Cipullo was acting under the direction, control and benefit of defendant District of Columbia.

354.    Defendant District of Columbia is liable for the emotional distress he intentionally inflicted upon Jiggetts as described herein while he was acting within the scope of his employment for defendant District of Columbia.

355.    Defendant District of Columbia is vicariously liable for the emotional distress Cipullo intentionally inflicted upon Jiggetts.

<u>COUNT XI</u>
**VIOLATION OF TENISHA JIGGETTS FIFTH AMENDMENT**
**RIGHT PURSUANT TO THE EQUAL PAY ACT OF 1963**

356.    Plaintiffs incorporate by reference paragraphs 1 through 355 as if fully set forth herein.

357.    During her six (6) year tenure as a DC Superior Court Attorney Advisor with the Criminal Division, Jiggetts worked in a variety of capacities, including but not limited to, monitoring halfway house placements, responding to inquiries concerning prisoner matters from judges, law clerks, attorneys, courtroom clerks and other staff, researching legal issues and advising court personnel and judges about the manner in which a new law, policy or regulation relates to the operation of the DC Superior Court Criminal Division.

358.    As a DC Superior Court Attorney Advisor with the Criminal Division, Jiggetts attained a grade GS-13, step ten (10) salary level and was paid according to her salary grade.

359.    Upon information and belief, there was a disparity between Jiggetts' grade and step level in comparison to her male counter-parts, specifically Attorney Advisors in the General Counsel's office who performed similar duties as Jiggetts in her capacity as a DC Superior Court Attorney Advisor with the Criminal Division.

360.    Upon information and belief, Jiggetts in her capacity as an Attorney Advisor and the Attorney-Advisors in the General Counsel's Office required the same skill, efforts and responsibilities in order to fulfill their duties and responsibilities.

361.    Upon information and belief, Jiggetts in her capacity as an Attorney Advisor and the Attorney Advisors in the General Counsel's Office performed their duties and responsibilities under similar working conditions.

362.     Upon information and belief, the Attorney Advisors in the General Counsel's office **were** a grade GS-14 and earned a higher salary than Jiggetts even though Jiggetts and the General Counsel's Office Attorney Advisors performed similar work.

363.     Jiggetts was subjected to a violation of the Equal Pay Act because she earned a lower salary than male Attorney Advisors assigned to the General Counsel's Office even though she performed similar work as the General Counsel's Office Attorney-Advisors.

**COUNT XII**
**ASSAULT AGAINST THE DISTRICT OF COLUMBIA**

364.     Plaintiffs incorporate by reference paragraphs 1 through 363 as if fully set forth herein.

365.     On November 17, 2014, DC Superior Court Chief Security Officer Richard Parris ("Parris") was assigned to escort Jiggetts out of the courthouse.

366.     As Parris escorted Jiggetts out of the courthouse, he physically and aggressively grabbed her arm, twisted it behind her back and threw her into a wall.

367.     Jiggetts was injured as a result of being assaulted by Parris when he threw her into the wall.

368.     Jiggetts sought medical treatment for the injury to her arm/shoulder and her treating physician directed her to wear a sling.

369.     Parris engaged in harmful and offensive contact against Jiggetts when he physically and aggressively grabbed her arm, twisted it behind her back and threw her into a wall.

370.     Parris carried out engaged in harmful and offensive contact against Jiggetts engaged in harmful and offensive contact against Jiggetts when he physically and aggressively grabbed her arm, twisted it behind her back and threw her into a wall.

371.    Solely as a result of Parris' harmful and offensive contact against Jiggetts when he physically and aggressively grabbed her arm, twisted it behind her back and threw her into a wall, she injured her arm and shoulder.

372.    As a direct and proximate result of Parris' willful, malicious, intentional aggressive, violent and intentional aggressive conduct towards Jiggetts, she injured her arm and shoulder.

373.    At all times relevant herein, Parris was acting within the scope of his employment for defendant District of Columbia.

374.    At all times relevant herein, Parris was acting under the direction, control and benefit of defendant District of Columbia.

375.    Defendant District of Columbia is liable for the assault Parris committed against Jiggetts while he was acting within the scope of his employment for defendant District of Columbia.

376.    Jiggetts has been injured economically and emotionally due to Cipullo's conduct.

## COUNT XIII
## VIOLATION OF TENISHA JIGGETTS FIFTH AMENDMENT RIGHTS PURSUANT TO 42 U.S.C. §1983 (AGAINST DEFENDANT DISTRICT OF COLUMBIA)

377.    Plaintiffs incorporate by reference paragraphs 1 through 376 as if fully set forth herein.

378.    Defendant District of Columbia failed to take any action, official or otherwise, against Cipullo because he provided Jiggetts with her 2013 performance evaluation over one-year late.

379.    Defendant District of Columbia failed to take any action, official or otherwise, against Cipullo because the submission of her 2013 performance evaluation precluded her from applying for vacancies or open positions within other DC Superior Court Divisions.

380.    Defendant District of Columbia failed to take any action, official or otherwise, against Cipullo because, upon information and belief, he permitted other DC Superior Court Criminal Division personnel and not Jiggetts to transfer to other court divisions.

381.    Defendant District of Columbia failed to take any action to stop Cipullo from speaking negatively about Jiggetts, including but not limited to, DC Superior Court Directors.

382.    Defendant District of Columbia did not take any action, official or otherwise, to stop Cipullo from, as described herein, engaging in racial and gender discrimination against Jiggetts.

383.    Defendant District of Columbia failed to take any action, official or otherwise, to stop the hostile work environment under which Jiggetts labor solely precipitated by Cipullo.

384.    Defendant District of Columbia failed to take any action, official or otherwise, to stop Cipullo's retaliatory conduct against Jiggetts, as described herein as a result of the grievance she filed on August 15, 2014, with the Clerk of the Court.

385.    Defendant District of Columbia failed to take any action, official or otherwise, to stop Cipullo's retaliatory conduct against Jiggetts, as described herein as a result of the Charge for Discrimination on September 22, 2014, with the EEOC.

386.    Defendant District of Columbia failed to take any action, official or otherwise, to stop Cipullo from engaging in screaming and yelling tirades and aggressive conduct as described herein, towards Jiggetts and other DC Superior Court Criminal Division personnel.

387.    Defendant District of Columbia failed to take any action, official or otherwise, to stop Cipullo from impeding Jiggetts ability to fulfill her duties and responsibilities as a DC Superior Court Attorney Advisor, including but not limited to, the instances in which Cipullo would direct Jiggetts to complete fictitious work.

388.    Defendant District of Columbia failed to take any action, official or otherwise, to stop Cipullo from moving to suspend Jiggetts, including but not limited to, as a result of her pursuit of a Charge of Discrimination with the EEOC against Cipullo.

389.    Defendant District of Columbia failed to take any action, official or otherwise, to stop the recommendation for Jiggetts' termination as a DC Superior Court Attorney Advisor with the Criminal Division.

390.    Cipullo's conduct precipitated the recommendation for Jiggetts' termination as a DC Superior Court Attorney Advisor with the Criminal Division.

391.    Defendant District of Columbia failed to take any action, official or otherwise, to stop Jiggetts' termination as a DC Superior Court Attorney Advisor with the Criminal Division.

392.    Defendant District of Columbia was fully aware of Cipullo's harassment, discriminatory, retaliatory and assaultive conduct, the hostile work environment he created as well as the physical and mental abuse he directed towards female African-American DC Superior Court Criminal Division personnel with advance degrees.

393.    Defendant District of Columbia was fully aware of Cipullo's harassment, discriminatory, retaliatory and assaultive conduct, the hostile work environment he created as well as the physical and mental abuse based on Jiggetts' grievances and complaints as well as the EEOC Charge of Discrimination against Cipullo.

394.    Defendant District of Columbia was fully aware of Cipullo's harassment, discriminatory, retaliatory and assaultive conduct, the hostile work environment he created as well as the physical and mental abuse he directed towards female African-American DC Superior Court Criminal Division personnel with advance degrees based on the grievances and complaints by personnel in the Criminal Division.

45

395.     Based on the grievances and complaints Jiggetts and other DC Superior Court Criminal Division personnel lodged against Cipullo as well as the overall process to pursue said grievances and complaints, numerous other officials and personnel in director and executive positions within the court's organizational structure were fully aware of Cipullo's unlawful and wrongful conduct as described herein.

396.     Defendant District of Columbia's failed to take any action, official or otherwise, to discipline, reprimand or stop Cipullo from engaging in the unlawful and wrongful conduct described herein.

397.     Defendant District of Columbia was aware of Cipullo's conduct and permitted him to continuously engage in a pattern and practice of unlawful and wrongful conduct as described herein and violate the rights of Jiggetts and other female African-American DC Superior Court Criminal Division personnel with advanced degrees.

398.     Defendant District of Columbia's failure to take any action, official or otherwise, to discipline, reprimand or stop Cipullo from violating the rights of Jiggetts and other female African-American DC Superior Court Criminal Division personnel with advanced degrees precipitated Cipullo's violation of the Constitutional rights afforded to Jiggetts and the other afore-mentioned DC Superior Court Criminal Division personnel pursuant to the Fifth Amendment.

399.     Defendant District of Columbia's chose to ignore Cipullo's unlawful and wrongful conduct as described herein solely due to its failure to take any action, official or otherwise, to discipline, reprimand or stop Cipullo from violating the Constitutional rights of Jiggetts and other female African-American DC Superior Court Criminal Division personnel with advanced degrees pursuant to the Fifth Amendment.

400.   Defendant District of Columbia acted with deliberate indifference by ignoring Cipullo's unlawful and wrongful conduct as described herein and failing to take any action, official or otherwise, to stop the unlawful conduct that he lodged against Jiggetts and other female African-American DC Superior Court Criminal Division personnel with advanced degrees.

401.   As a result of the grievances and EEOC Charge of Discrimination Jiggetts filed against Cipullo as well as grievances and complaints lodged against Cipullo from other female African-American DC Superior Court Criminal Division personnel with advanced degrees, the District of Columbia and numerous other officials and personnel in director and executive positions within the court's organizational structure were on notice of Cipullo's unlawful and wrongful conduct directed to the above-noted protected class as described herein.

402.   Defendant District of Columbia and numerous other officials and personnel in director and executive positions within the court's organizational structure were fully aware of the Constitutional violations Cipullo committed against the protected class, Jiggetts and other female African-American DC Superior Court Criminal Division personnel with advanced degrees.

403.   Defendant District of Columbia was aware of Cipullo's pattern and practice of unlawful and wrongful conduct as a result of the grievances, complaints and EEOC complaints filed by Jiggetts as well as other female African-American DC Superior Court Criminal Division personnel with advanced degrees.

404.   It was defendant District of Columbia's policy or custom to allow Cipullo's unlawful, discriminatory conduct to continue unabated.

405.   Solely as a direct and proximate cause of Cipullo's malicious, willful and wrongful, arbitrary, discriminatory, hostile and retaliatory conduct and unlawful and wrongful treatment of Jiggetts, adverse action was taken against her as precipitated by Cipullo.

406.    Jiggetts was suspended then terminated as a DC Superior Court Attorney Advisor with the Criminal Division.

407.    Jiggetts has been injured economically and emotionally due to Cipullo's conduct.

## COUNT XIV
## NEGLIGENT TRAINING, SUPERVISION AND RETENTION
## (AGAINST DEFENDANT DISTRICT OF COLUMBIA)

408.    Plaintiffs incorporate by reference paragraphs 1 through 407 as if fully set forth herein.

409.    Defendant District of Columbia had a duty to properly hire, train, supervise and fire, if necessary, its personnel, including but not limited to, Cipullo in order to protect Jiggetts, and other female African-American personnel who worked in the DC Superior Court Criminal Division against the reasonable dangers which would be likely to occur in absence of proper hiring, training, supervision, and firing.

410.    Defendant District of Columbia has failed to effectively train, supervise discipline, and control the personnel it employs as directors, supervisors and executive officials, including but not limited to, Cipullo, who was involved in the harassment, discriminatory, retaliatory and assaultive conduct, the hostile work environment he created as well as the physical and mental abuse he directed towards female African-American DC Superior Court Criminal Division personnel with advanced degrees.

411.    Defendant District of Columbia has failed to effectively train, supervise discipline, and control the personnel it employs as directors, supervisors and executive officials, including but not limited to, directors, supervisors and executive officials, who were fully aware of the harassment, discriminatory, retaliatory and assaultive conduct, the hostile work environment

48

Cipullo created as well as the physical and mental abuse he directed towards Jiggetts and other female African-American DC Superior Court Criminal Division personnel with advanced degrees.

412.    Defendant District of Columbia has failed to effectively train, supervise discipline, and control the personnel it employs as directors, supervisors and executive officials, including but not limited to, Cipullo, to execute his duties and responsibilities without engaging in harassment, discriminatory, retaliatory and assaultive conduct, violate the Constitutional rights afforded to DC Superior Court Criminal Division personnel, create a hostile work environment as well as engaging in physical and mental abuse towards female African-American DC Superior Court Criminal Division personnel with advanced degrees.

413.    Defendant District of Columbia has failed to effectively train, supervise discipline, and control the personnel it employs as directors, supervisors and executive officials within the DC Superior Court organization, including but not limited to, directors, supervisors and executive officials, to ensure that Cipullo did not engage in harassment, discriminatory, retaliatory and assaultive conduct, violate the Constitutional rights afforded to Jiggetts and other female African-American DC Superior Court Criminal Division personnel, create a hostile work environment, engage in physical and mental abuse towards Jiggetts and other female African-American DC Superior Court Criminal Division personnel with advanced degrees.

414.    Defendant District of Columbia has violated its duty to properly hire, train, supervise, and fire/suspend Cipullo, who engaged in harassment, discriminatory, retaliatory and assaultive conduct, violated the Constitutional rights afforded to Jiggetts and other female African-American DC Superior Court Criminal Division personnel, create a hostile work environment, engage in physical and mental abuse towards female African-American DC Superior Court Criminal Division personnel with advance degrees.

415.   Defendant District of Columbia has violated its duty to properly hire, train, supervise, and fire/suspend directors, supervisors and executive officials who ignored Cipullo's harassment, discriminatory, retaliatory and assaultive conduct, violations of the Constitutional rights afforded to Jiggetts and other female African-American DC Superior Court Criminal Division personnel, his creation of a hostile work environment and his engagement in physical and mental abuse towards female African-American DC Superior Court Criminal Division personnel with advanced degrees.

416.   Jiggetts has been injured economically and emotionally due to Cipullo's conduct.

### FACTS
### (Karen Cooper)

417.   On July 24, 2004, Cooper, who is an African-American female, commenced employment with the DC Superior Court.

418.   From 2004 until 2006, Cooper worked as the supervisor of the DC Superior Court Case Management Branch.

419.   From 2006 until 2007, Cooper worked in the DC Superior Court Special Proceedings Customer Service Office.

420.   From 2007 until 2008, Cooper worked in the DC Superior Court Warrant Division.

421.   In 2008, Cooper was awarded her Bachelors of Arts in English from Trinity Washington University.

422.   In July of 2008, Cooper established the Finance Department as directed by the Clerk of the Court to address budgetary matters within the DC Superior Court Criminal Division.

423.   In 2010, Cooper was awarded her Master's of Science in Administration Management from Trinity Washington University.

424.    From 2004 to 2014, Cooper supervised approximately thirty nine (39) DC Superior Court employees, including accounting technicians and deputy clerks.

425.    From 2006 to April 27, 2015, Cooper worked as a supervisor in the DC Superior Court Special Proceedings Branch.

426.    Cooper acted as Branch Chief of the Special Proceedings Branch on several occasions to fill in for Branch Chief Aaron Robinson who was absent from time to time.

427.    In 2008 to 2009, Cooper received a performance rating of exceeds expectations and a performance bonus.

428.    In 2009 to 2010, Cooper received a performance rating of exceeds expectations and a performance bonus.

429.    In July of 2008 Cooper attended the National Association for Court Managers Annual in Anaheim, California.

430.    In July of 2010, Cooper attended the National Association for Court Managers Annual in New Orleans, Louisiana.

431.    In July of 2012, Cooper attended the National Association for Court Managers Annual in Orlando, Florida.

432.    In 2011-2012, Cooper attended the Court's Management Training Program.

433.    Cooper's training and development included Court Performance Standard Courtools (2012), Fundamental Issues of Caseflow Management (2013) and Managing Court Financial Resources (2013).

434.    Cooper was involved in DC Superior Court Cross Training (2013-2014), Employee Recognition (2013-2014) and Black History Month (2012-2015).

## Count XV
**VIOLATION OF KAREN COOPER'S FIFTH AMENDMENT
RIGHT PURSUANT TO THE EQUAL PAY ACT OF 1963
(Against Daniel Cipullo and the District of Columbia)**

435.     Plaintiff incorporates by reference paragraphs 1 through 434 as if fully set forth herein.

436.     During Cooper's ten (10) year at DC Superior Court, she worked in a variety of capacities.

437.     Most recently and relevant to this action, Cooper worked as a supervisor in the Special Proceedings Branch directly under Aaron Robinson ("Robinson"), the Special Proceedings Branch Chief.

438.     During her tenure as a DC Superior Court Criminal Division employee, Cooper was a grade twelve (12), step six (6) salary level and was paid according to that salary grade.

439.     On June 27, 2013 a monthly scheduled manager's staff meeting was scheduled.

440.     Cooper was present at the June 27, 2013 meeting.

441.     During this meeting, Cipullo announced that Robinson Branch Chief of the Special Proceedings Branch, would be transferred to a new division effective July 22, 2013.

442.     Cipullo announced that the positon would be permanently filled between June 2013 and March 2014.

443.     During the July 27, 2013, meeting Cipullo discussed organizational changes that would result from Robinson's transfer.

444.     Various personnel shifts resulted in a vacant Quality Assurance Branch Chief position.

445.     Cipullo announced that Mr. Steven Murff ("Murff"), a Caucasian male, would be promoted to Acting Branch Chief of the Quality Assurance Branch.

446.     During the July 27, 2013, meeting Cipullo stated that he assumed that Cooper and Belinda Carr ("Carr") would apply for the vacant branch chief position in the Special Proceedings Branch.

447.     From 2011 until 2013, Murff worked as branch supervisor in the Quality Assurance Branch.

448.     Murff's duties expanded to include case management and quality assurance.

449.     Murff was a grade twelve (12) employee.

450.     Murff's experience and duties included quality assurance and case management.

451.     Cipullo engaged in and created a complex scheme of personnel transfers as a pretext to disguise his preference of promoting a Caucasian male employee over an African American female employee.

452.     Cipullo designed the scheme as described herein solely to put Cooper in a disadvantageous position in relation to career advancement.

453.     Cipullo designed the scheme as described herein solely to put Cooper in a disadvantageous position to earn equal pay for equal work.

454.     Specifically, when the branch chief position vacancy became available in the Special Proceedings Branch, Cipullo transferred Alicia Shepard ("Shepard"), the Chief of the Quality Assurance Branch to fill the Special Proceedings vacancy.

455.     Shepard informed Cooper, in an emphatic manner, that she did not want to be transferred to Special Proceedings

456.     Shepard further informed Cooper that he assigned to the Special Proceedings Branch was only temporary.

457.    Based on her professional experience during her tenure as a DC Superior Court Criminal Division employee as described herein, Cooper was duly qualified to be promoted to the Special Proceedings Branch Chief position.

458.    Cipullo's decision to transfer Shepard to Special Proceedings denied Cooper a promotion to the Special Proceedings Branch Chief vacancy.

459.    Cipullo's decision to transfer Shepard to Special Proceedings denied Cooper a promotion to the Special Proceedings Branch Chief vacancy denied Cooper's right to equal pay.

460.    Subsequent to Cipullo's decision for Shepard to be the Special Proceedings Branch Chief, he filled the Quality Assurance Chief vacancy by promoting Murff to the position of acting chief.

461.    Cipullo took this action in anticipation of Murff's application for the Quality Assurance Branch Chief vacancy.

462.    Cipullo promoted Murff to the Quality Assurance Acting Branch Chief position to ensure that Cooper or Carr did not have an unfair advantage when they applied for the Special Proceedings Branch Chief position.

463.    As a result of Cipullo's actions as described herein, Murff was promoted to a grade thirteen (13), step one (1) salary class.

464.    As a result of Cipullo's actions as described herein, Murff's salary increased.

465.    Cipullo's arbitrary promotion of Murff based solely on a scheme to give a male employee an unfair advantage over a female employee, which resulted in a violation of Cooper's rights under the Equal Pay Act.

466.     Based on Cooper's educational and professional background as a DC Superior Court Criminal Division employee, she was more qualified because she had more experience for the Special Proceedings Branch Chief position.

467.     Cooper had previously acted as the head of the Special Proceedings Branch when Robinson was unavailable.

468.     Cipullo thwarted Cooper's ability to become the Special Proceedings Branch Chief when he transferred Carr, the Quality Assurance Branch Chief, to become the Special Proceedings Branch Chief.

469.     Cooper was the most qualified person with the most experience in line to become the Special Proceedings Chief.

470.     Cooper excelled beyond Murff while performing equal work within the DC Superior Court Criminal Division.

471.     Cooper worked in both the DC Superior Court Warrant and Finance Divisions and had acquired more education.

472.     Cooper had acquired more tenure and experience as an acting chief than Murff.

473.     When Cipullo promoted Murff to the Acting Branch Chief of the Quality Assurance Branch, his salary increased to at least grade thirteen (13), step one (1).

474.     Murff's salary grade was greater than Cooper's salary grade, twelve (12), step six (6).

475.     Based on Cipullo's plan as described herein, he intentionally took measures to pay Murff more money and Cooper less money for doing similar work.

476.    On April 27, 2015, Copper voluntarily resigned from her employment with the DC Superior Court Criminal Division because she could no longer tolerate or endure the discriminatory conduct to deny her equal pay.

477.    Cooper was injured economically solely due to Cipullo's conduct.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs:

I.      Re-plead and re-allege counts I through XV, paragraphs 1 through 477 with the same force and effect as if fully set forth herein;

II.     Requests, subject to further discovery, the right to amend the complaint, and that the Court:

III.    Enter a finding and judgment against defendant District of Columbia in favor of plaintiff Tenisha Jiggetts in the amount of $8,000,000.00 plus punitive damages to the extent allowed by law and interest.

IV.     Enter a finding and judgment against defendant Cipullo in favor of plaintiff Jiggetts in the amount of $8,000,000.00, plus punitive damages to the extent allowed by law and interest.

V.      Enter a finding and judgment against defendant District of Columbia in favor of plaintiff Cooper in the amount of $6,500,000.00, plus punitive damages to the extent allowed by law and interest.

VI.     Enter a finding and judgment against defendant Cipullo in favor of plaintiff Cooper in the amount of 6,500,000.00, plus punitive damages to the extent allowed by law and interest.

VII.    Award fees and court costs to plaintiff Jiggetts;

VIII.   Award fees and costs to plaintiff Cooper; and

IX.     Award such other relief as this Honorable Court deems just and fair.

Tenisha N. Jiggetts
Karen W. Cooper
By Counsel

Respectfully submitted,

*/s/Billy L. Ponds*
Billy L. Ponds
Counsel for the Plaintiff
The Ponds Law Firm
Bar Number 379883
1250 24th Street, N.W.
Suite 300
Washington, D.C. 20007
Telephone Number: (202) 333-2922
E-Mail: plfpc@aol.com

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

| | |
|---|---|
| **TENISHA N. JIGGETTS, et.al.** | **:** |
| | **:** |
| **Plaintiffs,** | **:** |
| | **:** |
| **and** | **:** |
| | **:** Civil Action Number |
| **KAREN W. COOPER** | **:** |
| **4426 Ninth Street, NW** | **:**_____ |
| **Washington, D.C. 20011** | **:** |
| | **:** |
| **v.** | **:** |
| | **:** |
| **THE DISTRICT OF COLUMBIA** | **:** |
| **Defendants.** | **:** |

===================================

## JURY DEMAND

The plaintiffs hereby request a trial by jury of six (6) on all triable issues, including the amount of damages to be awarded.

> Tenisha N. Jiggetts
> Karen W. Cooper
> By Counsel
>
> Respectfully submitted,
>
> */s/Billy L. Ponds*
> Billy L. Ponds
> Counsel for the Plaintiff
> The Ponds Law Firm
> Bar Number 379883
> 1250 24th Street, N.W.
> Suite 300
> Washington, D.C. 20007
> Telephone Number: (202) 333-2922
> E-Mail: plfpc@aol.com