**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| TENISHA N. JIGGETTS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civ. No. 15-cv-0752 (KBJ) |
| | ) | |
| DISTRICT OF COLUMBIA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

On March 5, 2016, Plaintiffs Tenisha N. Jiggetts and Karen W. Cooper

("Plaintiffs") filed a Fourth Amended Complaint against the District of Columbia and

seven of its individual employees (collectively, "Defendants").  Jiggetts and Cooper

formerly worked for the Superior Court of the District of Columbia, and their lawsuit

arises out of a series of allegedly discriminatory and tortious acts they allegedly faced

in the context of their employment.  Plaintiffs' Fourth Amended Complaint (hereinafter

referred to as "the complaint") contains 20 separate claims for relief, and generally

asserts that (1) Defendants violated 42 U.S.C. § 1983 by depriving Plaintiffs of their

rights under the First, Fourth, and Fifth Amendments to the U.S. Constitution; (2)

Defendants' discriminatory and/or retaliatory conduct violated Title VII of the Civil

Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the Family and Medical

Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and the Age Discrimination in

Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*; and (3) Defendants have

committed the common law torts of assault, battery, negligence, and intentional and

negligent infliction of emotional distress.  (*See* 4th Am. Compl., ECF No. 37, at 48–76.)[1]

Before this Court at present is Defendants' motion to dismiss Plaintiffs' Fourth Amended Complaint.  (*See* Defs.' Mot. to Dismiss ("Defs.' Mot."), ECF No. 41.) Defendants argue that Plaintiffs' pleading—which is 78 pages long and contains more than 450 paragraphs—should be dismissed for failure to comply with Federal Rule of Civil Procedure 8, and that, in any event, Counts I and II (Section 1983 claims brought against various individual defendants) must be dismissed for failure to state a claim upon which relief can be granted.  (*See id.* at 3–4.)  For the reasons explained below, this Court agrees with Defendants that Plaintiffs' Fourth Amended Complaint fails to comply with Rule 8's pleading and notice requirements.  Furthermore, the Court notes that Plaintiffs have previously been granted several opportunities to produce a complaint that satisfies Rule 8 and thereby provides Defendants with succinct and sufficient notice of the legal theories that undergird Plaintiffs' claims and the particular allegations that support them.  Plaintiffs' Fourth Amended Complaint continues to contain scattershot assertions of fact that are not properly directed at the myriad legal claims that are inserted into the pleading, and this Court has little confidence that yet another try would yield a different result.  Consequently, Defendants' motion to dismiss the complaint is **GRANTED**, and this case will be **DISMISSED** without prejudice and in its entirety on Rule 8 grounds alone.  A separate order consistent with this Memorandum Opinion will follow.

---

[1] Page numbers herein refer to those that the Court's electronic case filing system automatically assigns.

I.      **BACKGROUND**

A.      **Alleged Facts**

Tenisha Jiggetts and Karen Cooper, two African-American females, are former employees of the District of Columbia.  (*See* 4th Am. Compl. ¶ 11.)  Jiggetts, who is forty-six years old, "served as the attorney advisor to the Criminal Division at the Superior Court of the District of Columbia" (*id.*), and Cooper, who is sixty-one, "served as a supervisor" in that same division (*id.*).  Plaintiffs allege that, on numerous occasions, several employees of the Superior Court of the District of Columbia— namely, Defendants Daniel W. Cipullo, Cheryl Bailey, Anne Wicks, Yvonne Martinez-Vega, Richard Parris, Nancy McKinney, and Belinda Carr—subjected Plaintiffs and other Superior Court employees to a variety of "racial, gender, age and compensation discrimination, harassment, a hostile work environment, interference and retaliation[.]" (*Id.* ¶ 19; *see also id.* ¶¶ 13, 153–54, 167, 176, 233.)  Plaintiffs' Fourth Amended Complaint describes a plethora of events, encounters, and general working conditions that range from instances of purported "bullying" and name-calling (*id.* ¶ 49) to less favorable treatment (*see id.* ¶ 54), including untimely and/or poor performance evaluations (*see id.* ¶¶ 78, 225).  The complaint describes some acts that were allegedly directed against Plaintiffs personally (*see, e.g., id.* ¶ 32), while other acts appear to have been taken against other Superior Court employees (*see, e.g., id.* ¶¶ 51, 76–77) or racial minorities in general (*see, e.g., id.* ¶¶ 46, 54, 70).  Jiggetts claims that she was also involved in physical or verbal altercations with Defendants Parris and Cipullo (*see id.* ¶¶ 119–120, 128, 132), after which she was unlawfully suspended, and her employment was terminated (*see id.* ¶¶ 131, 135).  Cooper alleges that, as a result of

some or all of the aforementioned acts, she was ultimately forced to resign.  (*See id.* ¶ 238.)

### B.    Procedural History

#### 1.   Plaintiffs' Complaints

Plaintiffs have submitted five complaints in this matter, the first of which was filed on May 20, 2015.  Plaintiffs' initial complaint, which was brought against the District of Columbia and individual defendant Cipullo, was 56 pages long, contained 477 paragraphs, and alleged 15 separate statutory and constitutional violations.  (*See* Compl., ECF No. 1.)[2]  For the next 18 months, Plaintiffs sought leave to amend their complaint three times.  (*See* Motions for Leave to File Amended Complaints, ECF Nos. 10, 27, 31.)  At each turn, Plaintiffs increased the number of claims, the number of defendants, and the breadth and depth of their factual allegations.  (*See, e.g.*, 1st Am. Compl., ECF No. 11 (raising 27 counts in a 56-page, 482-paragraph pleading brought against six total defendants); 2nd Am. Compl., ECF No. 30 (raising 29 counts in a 73-page, 593-paragraph pleading brought against six total defendants); 3rd Am. Compl.,

---

[2] Fourteen of the counts in the initial complaint pertained only to Jiggetts and one was brought by Cooper.  Jiggetts claimed:  (1) gender discrimination under Title VII; (2) race discrimination under Title VII; (3) race, gender, and color discrimination against Cipullo under the D.C. Human Rights Act; (4) race, gender, and color discrimination against the District of Columbia under the D.C. Human Rights Act; (5) hostile work environment under Title VII; (6) retaliation under Title VII; (7) common law false imprisonment against Cipullo; (8) false imprisonment against the District of Columbia through vicarious liability; (9) intentional infliction of emotional distress against Cipullo; (10) intentional infliction of emotional distress against the District of Columbia through vicarious liability; (11) Fifth Amendment rights violation, pursuant to the Equal Pay Act, based on gender; (12) assault against the District of Columbia through vicarious liability; (13) Section 1983 claim against the District of Columbia based on her Fifth Amendment rights against a pattern or practice of unequal treatment; and (14) negligent training, supervision, and retention claim against the District of Columbia.  (*See* Compl. at 15–50.)  Cooper asserted only that the District of Columbia and individual defendant Cipullo had violated her Fifth Amendment rights pursuant to the Equal Pay Act.  (*See* Compl. at 52–56.)

ECF No. 32 (raising 51 counts in a 135-page, 1072-paragraph pleading brought against eight total defendants).)

At a status conference on February 11, 2016, the parties agreed to the Plaintiffs' filing of a fourth amended complaint. (*See* Feb. 11, 2016 Hr'g Tr., ECF No. 49, at 9–10.)[3]  A Court order memorializing this agreement followed. (*See* Min. Order of Feb. 11, 2016.)  Then, on March 5, 2016, Plaintiffs filed the instant pleading (the Fourth Amended Complaint), which stands at 78 pages and 459 paragraphs long.  The Fourth Amended Complaint alleges statutory, constitutional, and common-law violations in the context of 20 counts that have been brought against the District of Columbia and seven of its employees, both in their individual and official capacities. (*See* 4th Am. Compl.)

While shorter in length than many of its predecessors, the Fourth Amended Complaint is hardly a model of clarity.  For example, Plaintiffs' Tenth Count extends over twenty-two paragraphs (*see id.* ¶¶ 351–72) and is titled "MIXED MOTIVE RACE, AND/OR SEX, AND/OR AGE AND/OR RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. § 2000(e) HOSTILE WORK ENVIRONMENT AND THE ADEA JIGGETTS AND COOPER AGAINST THE DISTRICT OF COLUMBIA" (*id.* at 63).  As far as the Court can discern, in this one count alone Jiggetts and Cooper allege that the District of Columbia (through the acts of any, some, or all of the individual Defendants) violated Title VII and the ADEA, when it "interfered and obstructed [Jiggetts's] requests for a transfer to another division" (*id.* ¶¶ 353–54); "failed to promote [Cooper]" (*id.* ¶¶ 355–56); "failed

---

[3] This agreement was reached at the Court's urging, in order to avoid Defendants' anticipated filing of a Rule 8 motion to dismiss regarding the Third Amended Complaint, and to accommodate the Court's stated concerns regarding the excessive length and lack of clarity in that pleading. (*See* Feb. 11, 2016 Hr'g Tr. at 9–10.)

to select [Cooper] for the Special Proceedings Branch and Quality Assurance Branch Chief positions" (*id.* ¶¶ 357–58); interfered, obstructed and abolished Plaintiffs' "compressed days off" (*see id.* ¶¶ 95, 359–62); gave Plaintiffs low performance ratings (*see id.* ¶¶ 363–66); "interfered with, obstructed and terminated [Jiggetts's] employment" (*id.* ¶ 368; *see also id.* ¶ 368); and constructively discharged Cooper (*see id.* ¶¶ 369–70).  This one count also alleges that each of these events was motivated (in whole or in part) by discriminatory animus due to Jiggetts's and Cooper's race or gender or age, and/or was undertaken in retaliation for their engaging in protected EEO activity—or some combination of some or all of these improper motives—and that, through it all, Defendants subjected Jiggetts and Cooper to a hostile work environment. (*See id.* ¶¶ 351–72; *see also id.* at 69 (attributing the conduct in Count Ten to each and every one of these theories).)

### 2.  Defendants' Motion to Dismiss

On April 8, 2016, Defendants filed a joint Motion to Dismiss Plaintiffs' Fourth Amended Complaint, which argues that the pleading should be dismissed in its entirety for lack of clarity and brevity pursuant to Rule 8(a).  (*See* Defs.' Mot. at 3, 7–8.) Defendants contend that the complaint's lengthy factual narrative is hopelessly vague and "almost entirely divorced from . . . the legal basis for their claims" (*id.* at 7), and thus requires Defendants to guess *which* of the myriad acts recited in the complaint pertains to each of the 20 counts (*see id.* at 3 (describing the complaint as riddled with "scattershot factual allegations that Plaintiffs largely fail to connect with their mottled legal theories")).  In this regard, Defendants maintain that, the sheer "breadth of the factual allegations"—when coupled with the complaint's varied and wide-ranging legal

contentions—renders the pleading incapable of providing "adequate notice of the basis of Plaintiffs' claims" as Rule 8(a) requires.  (*Id.* at 7, 8.)  Defendants also challenge the Section 1983 claims that are based on alleged violations of the First and Fifth Amendments (Counts I and II) on the grounds that these particular claims are "plainly deficient" (*id.* at 3), and must be dismissed for failure to state a claim upon which relief can be granted (*see id.* at 8–13).

In opposition, Plaintiffs argue that the amended complaint is necessarily lengthy because it contains every fact required to state their legal claims; and, indeed, the "facts follow a logical progression that provides the defendants and the Court with fair notice of the claims being asserted, so that defendants may be able to prepare a responsive answer and an adequate defense."  (Pls.' Opp'n to Defs.' Mot. to Dismiss ("Pls.' Opp'n"), ECF No. 43, at 5.)  With respect to Defendants' contentions regarding Counts I and II, Plaintiffs insist that these claims are viable because their EEOC complaints qualify as protected speech under the First Amendment (*see id.* at 5–9), and because the myriad personnel actions laid out in the amended complaint reasonably support an inference of "intentional racial discrimination" in violation of the Fifth Amendment (*id.* at 19; *see also id.* 12–19 (setting forth examples of discriminatory conduct laid out in the amended complaint, but warning that the list is not exhaustive)).

Defendants' motion to dismiss Plaintiffs' Fourth Amended Complaint is now ripe for this Court's review.

## II.      LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a) mandates that a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to

relief." Fed. R. Civ. P. 8(a)(2). Rule 8(d)(1) further elucidates this mandate, by requiring that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "Taken together, Rules 8(a) and [8(d)(1)] underscore the emphasis placed on clarity and brevity by the federal pleading rules[,]" *Ciralsky v. CIA*, 355 F.3d 661, 669 (D.C. Cir. 2004) (internal quotation marks and citation omitted), and it is well established that Rule 8 "sets out a minimum standard for the sufficiency of complaints" in order "to give fair notice of the claim[s] being asserted" and the grounds upon which they rest, "so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of *res judicata* is applicable[,]" *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977) (citations omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (explaining that the requirements of Rule 8 are meant "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (alteration in original) (internal quotation marks and citation omitted)).

Significantly, pursuant to these rules, "[t]he court or opposing party must be able to understand whether a valid claim is alleged and if so what it is." *Poblete v. Indymac Bank*, 657 F. Supp. 2d 86, 96 (D.D.C. 2009) (internal quotation marks and citation omitted). "[W]hat is the proper length and level of clarity for a pleading . . . is largely a matter that is left for the discretion of the trial court," and varies from case to case depending on "the nature of the action, the relief sought, and the respective positions of the parties in terms of the availability of information and a number of other pragmatic matters." 5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1217 (3d ed. 2004). "Still, a complaint that is excessively long, rambling, disjointed,

incoherent, or full of irrelevant and confusing material" will patently fail the Rule's standard, and so will "a complaint that contains an untidy assortment of claims that are neither plainly nor concisely stated, nor meaningfully distinguished from bold conclusions, sharp harangues and personal comments." *T.M. v. District of Columbia*, 961 F. Supp. 2d 169, 174 (D.D.C. 2013) (internal quotation marks and citations omitted).   And if a complaint fails to comport with the standards of Rule 8, the court may dismiss the pleading or the action.   *See* Fed. R. Civ. P. 41(b); *see also Ciralsky*, 355 F.3d at 669 (explaining that "Rule 41(b) authorizes the court to dismiss either a claim or an action because of the plaintiff's failure to comply with" Rule 8); *Kuehl v. FDIC*, 8 F.3d 905, 908 (1st Cir. 1993) ("A district court has the power to dismiss a complaint when a plaintiff fails to comply with the Federal Rules of Civil Procedure, including Rule 8(a)(2)'s 'short and plain statement' requirement.").

"When a trial court concludes that an initial complaint fails to satisfy Rule 8, an appropriate remedy is to strike the complaint . . . and to provide the plaintiff with an opportunity to file an amended complaint that complies with the Rules."  *Achagzai v. Broad. Bd. of Governors*, 109 F. Supp. 3d 67, 69 (D.D.C. 2015); *Muhammad v. Dine*, No. 14-cv-507, 2014 WL 1284761, at *1 n.1 (D.D.C. Mar. 26, 2014), *aff'd*, 602 F. App'x 542 (D.C. Cir. 2015); *cf. United States ex rel. Shea v. Verizon Commc'ns, Inc.*, 160 F. Supp. 3d 16, 30 (D.D.C. 2015) (noting that "a complaint begins an action, but amendment or dismissal without prejudice of that complaint does not end the action[; a]s long as the complaint may be amended, the action itself continues").   However, "the federal courts are far less charitable when one or more amended pleadings already have been filed with no measurable increase in clarity."  5 Wright & Miller, Federal Practice

& Procedure § 1217.  If a plaintiff has been given ample opportunity to comply with

Rule 8 but fails to do so, or if the amended pleading suffers from similar

insufficiencies, then it is appropriate for the Court to dismiss the case without providing

another opportunity to amend.  *See Ciralsky*, 355 F.3d at 669 (affirming dismissal of the

entire action because the amended complaint suffered from the same Rule 8

deficiencies); *Gardner v. United States*, 211 F.3d 1305, 1309 (D.C. Cir. 2000)

(observing that dismissal pursuant to Rule 41(b) should be taken "after unfruitful resort

to lesser sanctions" (citation omitted)); *Shallal v. Gates*, 254 F.R.D. 140, 143–44

(D.D.C. 2008) (noting that the "unusual remedy" of dismissing an action for failure to

comply with a court order is warranted where a complaint, despite multiple attempts to

amend, repeatedly fails to comply with the Federal Rules).

Notably, a court must be cautious about dismissing a case *with prejudice* on

Rule 8 grounds, because doing so forecloses the plaintiff's opportunity to file a cured

complaint in future proceedings and start the action anew.  *See Burrell v. AT & T*, 63 F.

App'x 588, 589 (2d Cir. 2003) (noting that dismissing the action without prejudice is "a

lesser sanction than dismissal with prejudice"); *see* also *Kuehl*, 8 F.3d at 908

(explaining that the "federal rules promote the disposition of claims on the merits rather

than on the basis of technicalities," so "courts should be reluctant to impose a dismissal

with prejudice for a rules violation that is neither persistent nor vexatious, particularly

without some review of the merits").  Thus, dismissals *without* prejudice are the norm

absent exceptional circumstances, such as where "a party fails or refuses to file an

amended and simplified pleading or does not exercise good faith in purporting to do

so[.]"  5 Wright & Miller, Federal Practice & Procedure § 1217; *see also Griffin v.*

*Milwaukee Cty.*, 369 F. App'x 741, 743 (7th Cir. 2010) ("A court is free to dismiss a complaint with prejudice when the plaintiffs have been given opportunities to amend, but fail to do so.").

## III.      ANALYSIS

Plaintiffs have had five opportunities to produce a complaint that satisfies the standards set forth in Federal Rule of Civil Procedure 8(a) and (d)(1), and yet the Fourth Amended Complaint continues to contain prolix, irrelevant, and scattershot assertions of fact that are not clearly or properly aligned with the myriad legal claims that randomly appear in the 78-page pleading.  Thus, as explained below, the complaint at issue does not comply with the requirements of Federal Rules, and at this point the Court has abandoned all hope that the myriad deficiencies in Plaintiffs' complaint will be addressed in the context of the instant action.  Consequently, Defendants' motion to dismiss will be granted, and this case will be dismissed without prejudice and in its entirety.

### A.      Plaintiffs' Fourth Amended Complaint Fails To Meet Rule 8's Clarity And Brevity Standards

The Fourth Amended Complaint violates Rule 8 in at least three respects:  (1) it is unnecessarily detailed and lengthy; (2) it contains irrelevant and confusing material; and (3) it lacks sufficient clarity to give fair notice of the claims raised and their basis.

First, Plaintiffs' pleading is unnecessarily lengthy, and thus fails on its face to provide "simple, concise and direct" factual averments and a "short and plain" statement of the legal claims.  To be sure, Plaintiffs have made an attempt to reduce the overall length of the pleading.  (*Compare* 3rd Am. Compl. (135 pages long), *with* 4th

11

Am. Compl. (78 pages long).)  But their Fourth Amended Complaint remains "quite long—a point that is more than simply a matter of aesthetics." *Ciralsky*, 355 F.3d at 669.  It is well established that "[un]necessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Id.* (internal quotation marks and citation omitted).

That task has proven to be overwhelming in the instant case.  Put frankly, it is nearly impossible to discern the *essential* facts that underlie Plaintiffs' legal claims because of the excessively lengthy recitation of events and myriad seemingly irrelevant descriptions that are presented in this pleading.  (*See, e.g.*, 4th Am. Compl. ¶¶ 14–18, 163–67 (detailing Jiggetts's and Cooper's academic and professional background); *id.* ¶¶ 32–40, 78–82, 86, 217–26, 229–30 (describing, at length and repeatedly, the performance evaluation process and the circumstances surrounding the Plaintiffs' untimely receipt of certain negative evaluations); *id.* ¶¶ 35, 71, 79, 85, 88, 91, 96, 105, 116–19, 169, 174, 204, 207–08, 230 (explaining the manner in which Defendants' conduct allegedly violated several internal personnel policies, without explaining the legal significance of these purported violations); *id.* ¶¶ 206–07 (describing personal inconveniences that Cooper allegedly experienced from changes to her work schedule); *id.* ¶¶ 19–20, 53–54, 65–69, 136, 141–43, 147–57, 177, 201, 215–16, 221, 225, 232–35, 240–50 (making generalized and conclusory allegations regarding the conduct described, in a manner that mirrors the 29-page legal elements section).)

Second, and relatedly, because the Fourth Amended Complaint contains seemingly irrelevant and unnecessary facts, the actual factual basis of Plaintiffs' legal

claims (whatever it may be) is obscured, which makes the pleading hopelessly confusing.  Ordinarily, excessive detail is mere "[s]urplusage [that] can and should be ignored[,]" *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003), but in some cases, excessive averments regarding extraneous facts "make a complaint unintelligible, by scattering and concealing in a morass of irrelevancies the few allegations that matter[,]" *id.*

The instant complaint unquestionably falls into the unintelligible category.  For example, Plaintiffs include a host of facts that relate to their employment but do not clearly pertain to the legal claims they allege, such as descriptions of allegedly discriminatory conduct to which *other* individuals were subjected; these descriptions are either wholly irrelevant to the matter at hand or are inexplicably (and possibly erroneously) being recited as grounds for some of Plaintiffs' claims.  (*See, e.g.*, 4th Am. Compl. ¶¶ 22–23 (complaining about the selection of McKinney, a less-qualified "Caucasian female," to a position that "Jiggetts did not apply for" because Cipullo's alleged racial bias discouraged Jiggetts from pursuing it); *id.* ¶ 24 (complaining that McKinney was not reprimanded after making a mistake, but failing to provide a relevant comparator, or to explain the significance of the event).)  Because these additional factual averments relate to the general subject matter at issue in the complaint (i.e., discrimination and retaliation), one cannot easily discern the significance of these extraneous facts, and thus it is exceedingly difficult for Defendants to determine the basis for Plaintiffs' claims, as necessary to prepare a proper answer.  *See Brown v. Dalton*, No. 96-5285, 1997 WL 362505, at *1 (D.C. Cir. May 5, 1997) (noting that when a complaint "contains numerous unnecessary averments

and is so lengthy and confusing[,]" the defendant "cannot be expected to formulate a response that would apprise [the plaintiff] of the allegations in the complaint that stand admitted and will not be in issue at trial and those that are contested and will require proof to be established" (internal quotation marks and citations omitted)).  Thus, some of the unnecessary facts not only complicate the exercise of discerning the legal landscape, they also actively prevent Defendants from adequately raising certain defenses to the complaint.[4]

The third problem that arises from Plaintiffs' Fourth Amended Complaint is that the myriad factual allegations are entirely divorced from the various legal claims that Plaintiffs assert.  The Fourth Amended Complaint consists of 43 pages of facts that detail countless events and acts of various Defendants with respect to one or both Plaintiffs (*see* 4th Am. Compl. ¶¶ 14–250), followed by 29 pages of pure legal language that repeatedly lists the elements of a host of legal claims (*see id.* ¶¶ 251–459).  Each of the 20 counts generally "incorporate[s] by reference" every paragraph before it, and

---

[4] One particularly potent example of how the excessive and extraneous matter in Plaintiffs' Fourth Amended Complaint impedes an effective defense is manifest in the difficulty that any defendant would have when formulating an argument about administrative exhaustion or the untimely filing of administrative complaints with respect to Plaintiffs' Title VII and ADEA claims.  The complaint makes numerous vague allegations regarding administrative complaints that may or may not form the basis of the current suit.  (*See* 4th Am. Compl. ¶¶ 82–83 (alleging that Jiggetts's complaints against Cipullo were filed with the Clerk of the Court and with Cipullo himself); *id.* ¶ 98 (stating that, "[o]n or about September 22, 2014, solely as a result of the culmination of Cipullo's discriminatory, harassing, abusive and retaliatory conduct as described herein, Jiggetts filed an EEOC Charge of Discrimination"); *id.* ¶ 49 (asserting that "Cooper filed a bullying complaint against Cipullo regarding [derogatory name-calling] and due to other abusive conduct" with an unnamed agency or department); *id.* ¶ 6 (noting that "[o]n June 19, 2015, Cooper filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission"); *id.* ¶ 203 (stating that Cooper filed her EEO complaint on June 25, 2014); *id.* ¶ 65 (referring to several complaints filed by African-American employees with unspecified agencies at unspecified times); *id.* ¶ 51 (asserting that "Sonia Miranda . . . , a female African-American Courtroom Clerk Trainer in the DC Superior Criminal Division filed an EEOC complaint against Cipullo").)  But in the absence of clarity regarding *which* of these administrative actions truly matters with respect to the claims that Plaintiffs are alleging in the instant case, Defendants cannot possibly articulate an argument regarding administrative exhaustion.

most counts fail to give any indication of the particular allegations that correspond to the legal theories and claims that are alleged in the count at issue.  (*Id.* ¶ 251; *see also, e.g.*, *id.* ¶¶ 265, 274, 282, 293, 304.)  And this same core flaw appears in every one of the amended pleadings that Plaintiffs have filed with this Court; that is, in each, the reader must "guess at what factual allegations underpin each claim, making it difficult to evaluate which, if any, show that Plaintiffs are entitled to relief."  (Defs.' Mot. at 3.)

Count Ten in the Fourth Amended Complaint provides a clear illustration of the complaint's deficiencies in this regard.  This count spans 21 paragraphs, and 18 of them make muddled statements that indiscriminately assert different legal theories and that only refer to the underlying facts in passing.  By way of example, here are four of the "claims" in Count Ten that pertain to Plaintiff Cooper:

> 355.   Defendant District of Columbia discriminated against Cooper based on her race (African-America), and/or sex (female) and/or age (date of birth __/__/1954) in retaliation for her opposing an unlawful discriminatory employment practice and for her engagement in protected EEO activity when it failed to promote her.
>
> 356.   Defendant District of Columbia discriminated against Cooper based on her race (African-American), and/or sex (female) and/or age (date of birth __/__/1954) for her engagement in protected EEO activity when it failed to promote her.
>
> 357.   Defendant District of Columbia discriminated against Cooper based on her race (African-America), and/or sex (female) and/or age (date of birth __/__/1954) in retaliation for her opposing an unlawful discriminatory employment practice and for her engagement in protected EEO activity when it failed to select her for the Special Proceedings Branch and Quality Assurance Branch Chief positions.
>
> 358.   Defendant District of Columbia discriminated against Cooper based on her race (African-American), and/or sex (female) and/or age (date of birth __/__/1954) for her engagement in protected EEO activity when it failed to select her for the Special Proceedings Branch and Quality Assurance Branch Chief positions.

(4th Am. Compl. ¶¶ 355–58.)  Because each of these averments is vaguely worded, nearly identical, and comes after 43 pages of facts that recount numerous events that may (or may not) pertain to these claims, one cannot readily discern what claims are being made in relation to what conduct, and more specifically, one does not know whether Plaintiff Cooper is complaining about *four different instances* of a failure to promote or alleging four distinct *theories of liability* with respect to a single failure-to-promote event (i.e., her non-selection for the Special Proceedings Branch and Quality Assurance Branch Chief positions).  And this confusion regarding the events that are being referenced is only the tip of the iceberg:  each of these four repetitive paragraphs regarding Cooper's "non-selection" are almost indistinguishable, and appear to rest, at least in part, on a theory of "retaliation" that is based on purported "EEO activity" and/or "opposing an unlawful discriminatory employment practice" (*id.* ¶ 355), but there are no allegations in the complaint that Cooper engaged in *any* EEO-related activity or voiced her opposition to any practice before the alleged "non-selection" took place.[5]

The fact that there are multiple legal theories smooshed into each of the counts merely muddles matters, and thereby exacerbates the lack-of-clarity problem.  During the February 11th hearing, the Court commented, with respect to the 12 separate discrimination claims that appeared in the Third Amended Complaint, that if the same *facts* underlay some the counts but the claim is being attributed to alternative motives

---

[5] Cooper avers that she filed EEO complaints on two different dates (*see* 4th Am. Compl. ¶ 6 (stating Cooper filed her EEO complaint on June 19, 2015); *see also id.* ¶ 203 (stating Cooper filed her EEO complaint on June 25, 2014)), but both of these filings occurred *after* the alleged "non-selection" of July 2013 (*see id.* ¶¶ 180–82), making it legally and factually impossible for the purported EEO activities, which had not yet taken place, to be a motivating factor in Cipullo's selection.

for the allegedly discriminatory or retaliatory act (i.e., gender or race) then the counts

could be merged together, so long as the federal or state laws being asserted as the basis

for the claim share a common legal standard.  (*See* Feb. 11, 2016 Hr'g Tr. at 4–5.)

Plaintiffs then apparently proceeded to merge the 12 discrimination-related counts into

only four counts in the Fourth Amended Complaint, but did not take care to analyze the

facts that give rise to each count or the legal standards upon which they turned.  The

significance of this oversight cannot be overstated:  Title VII and the ADEA, for

instance, have "materially different" burdens of persuasion, their legal standards are not

interchangeable, their statutory elements are not always coterminous, and notably, the

ADEA (unlike Title VII) does not "authorize[] a mixed-motives age discrimination

claim."  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009).  And even with

respect to Title VII violations, the standards applicable to the various legal theories that

can underlie a Title VII claim can be incongruous:  e.g., "race" and "gender"

discrimination can form the basis of a "mixed-motive" claim because they need only be

a "motivating factor" of the adverse employment action; however, retaliation must be

the "but-for" cause of the adverse act and thus cannot be brought as a mixed-motive

claim under Title VII.  *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517,

2534 (2013).  Thus, it is needlessly confusing to present all-in-one counts that purport

to seek relief for discrimination on the basis of age, race, and gender and retaliation.

(*See, e.g.*, 4th Am. Compl. at 63 (Count Ten).)

These illustrations are among the many problems that exist with respect to *all* of

the counts in the Fourth Amended Complaint, and they amply demonstrate that, in its

current form, Plaintiffs' Fourth Amended Complaint fails to provide sufficient notice of

the nature and grounds of Plaintiffs' legal claims.  Moreover, "[i]t is counsel's responsibility, not the Court's, to organize th[e] information prior to the filing of a complaint into the 'clear and concise' statements required by the Rules."  *Chennareddy v. Dodaro*, 282 F.R.D. 9, 16 (D.D.C. 2012).  And it is clear beyond cavil that "[a] 'shotgun pleading'—one in which 'it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief'—does not comply with the standards of Rule[] 8[.]"  *Kabbaj v. Obama*, 568 F. App'x 875, 879 (11th Cir. 2014).

### B.   Plaintiffs' Apparent Belief That The Pleading Standards Require Excessively Detailed Allegations Of Fact, Along With An Indiscriminate Pack Of Potential Legal Theories, Is Mistaken

In opposition to Defendants' motion to dismiss, Plaintiffs maintain that they have "included all of the necessary facts" required in order to state a claim for relief under the "heightened pleading requirement" detailed in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), and *Iqbal v. Ashcroft*, 556 U.S. 662 (2009).  (Pls.' Opp'n at 5.)  But this Court finds, as others have before it, that distilling the facts into a coherent recitation of essential information "would not have reduced [Plaintiffs'] chances of success on the merits[.]"  *Ciralsky*, 355 F.3d at 671.  Indeed, in contrast to Plaintiffs' contentions, the Supreme Court's decisions in *Iqbal* and *Twombly* clarify that "[s]pecific facts are *not* necessary" in order to state a claim for relief; to the contrary, the pleading need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (emphasis added) (quoting *Twombly*, 550 U.S. at 555); *see also Iqbal*, 556 U.S. at 678 ("[T]he pleading standard Rule 8 announces does not require detailed factual allegations" (internal quotation marks and citation omitted)).  Thus, if Plaintiffs had taken steps to

pare down the complaint in compliance with Rule 8, instead of loading up their pleading with every conceivable detail that related to any and all aspects of Plaintiffs' employment, such edits would not necessarily have given rise to a successful subsequent challenge by Defendants for failure to state a claim under Rule 12(b)(6), as Plaintiffs maintain.

What is more, Plaintiffs' suggestion that there is a tension between complying with Rule 8 and stating a claim, such that including excessive detail is unavoidable, is misguided.  The Rules make clear that, as far as claims are concerned, form and substance are two different things.  Rule 8, which "requir[es] each averment of a pleading to be simple, concise, and direct, applies to good claims as well as bad, and is a basis for dismissal independent of Rule 12(b)(6)."  *Chennareddy*, 282 F.R.D. at 16 n.6 (internal quotation marks omitted) (quoting *McHenry*, 84 F.3d at 1179).  And, notably, this Court expresses no opinion as to the viability of Plaintiffs' allegations here.  That is, even if the counts in the Fourth Amended Complaint actually state a claim upon which relief can be granted, "why should the court be obliged to try" to "navigate through these papers" in order to make that determination?  *United States ex rel. Garst*, 328 F.3d at 378.  Rule 8(a)'s very purpose is to relieve the Court (and opposing counsel) of that burden:  it "requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud." *Id.*

Plaintiffs are also wrong to contend that their claims are sufficiently clear because Defendants "were able to prepare a table of allegations, setting out the factual and legal basis for each claim," and thus should be deemed to have "sufficient notice of

the factual allegations for each of the claims that the plaintiffs are seeking relief."
(Pls.' Opp'n at 5.)  In this Court's view, the fact that Defendants have done yeoman's
work in trying to make sense of Plaintiffs' impenetrable pleading does not mean their
chart is any less of an exercise in guesswork, nor does it relieve Plaintiffs of their Rule
8 responsibility of making their claims clear and concise.  In any event, Defendants'
table merely *lists* various aspects of the Fourth Amended Complaint—(1) the count
numbers; (2) the underlying legal theories; (3) the statutory, constitutional, or common
law bases; (4) the Defendant who is accused of the alleged violation; and (5) the
Plaintiff that is seeking redress (*see* Defs.' Mot. at 5–6)—and (despite its title) this
compilation does not really attempt to identify the "Factual Basis" for any given legal
count, let alone succeed in doing so (*id.* at 5).

## C.      The Entire Action Will Be Dismissed Without Prejudice

Plaintiffs have already had myriad proverbial bites at the apple in this case—
each of which was unsuccessful, even after explicit instructions—and the Court does
not anticipate that any additional opportunities to amend the complaint will be
productive.  Under these circumstances, when "determining whether a dismissal is
warranted, the court considers the effect of a plaintiff's dilatory or contumacious
conduct on the court's docket, whether the plaintiff's behavior has prejudiced the
defendant, and whether deterrence is necessary to protect the integrity of the judicial
system."  *Allen v. United States*, 277 F.R.D. 221, 223 (D.D.C. 2011) (internal quotation
marks and citation omitted).  And if the court opts to dismiss the lawsuit, it must
"explain why dismissal is warranted and why other measures are likely to be

ineffective." *Mikkilineni v. Penn Nat. Mut. Cas. Ins. Co.*, 271 F. Supp. 2d 151, 154–55 (D.D.C. 2003).

Here, the Court has decided to follow the well-established practice of dismissing the case when a plaintiff has already been afforded the opportunity to amend her pleading but has failed to cure the infirmities. *See, e.g.*, *Ciralsky*, 355 F.3d at 669 (upholding the district court's dismissal of the entire action without prejudice when the defendant was given a prior opportunity to correct the error but his amended complaint suffered from the same Rule 8 defects); *Shallal*, 254 F.R.D. at 140 (same); *Burrell*, 63 F. App'x at 589 (same); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (noting the district court's power "to dismiss a prolix complaint without leave to amend in extraordinary circumstances, such as where leave to amend has previously been given and the successive pleadings remain prolix and unintelligible"). Furthermore, this Court finds that, given the lengthy procedural history of this case, any further opportunity to amend would prove futile, *see McHenry*, 84 F.3d at 1178, and would unfairly waste the defendants' time and the Court's resources, *see United States ex rel. Garst*, 328 F.3d at 378 ("Federal judges have better things to do [than try to discern unclear or disconnected claims], and the substantial subsidy of litigation (court costs do not begin to cover the expense of the judiciary) should be targeted on those litigants who take the preliminary steps to assemble a comprehensible claim."). Plaintiffs have "had a [number of] chance[s] to make meaningful modifications to their complaint and, indeed, were given some advice about how to do so"; yet, it appears that they have "squandered" these opportunities. *Kuehl*, 8 F.3d at 908.

Notably, the instant action will be dismissed *without* prejudice—a remedy that, absent any statute of limitations issues, will permit Plaintiffs to file a new complaint that complies with Rule 8 "in a separate action in this judicial district or as one or more actions in other venues." *Mouzon v. Radiancy, Inc.*, 309 F.R.D. 60, 65 (D.D.C. 2015).[6] The Court notes that, "[b]ecause [Plaintiffs] may refile the same suit on the same claim, dismissal without prejudice does not constitute such a harsh sanction and does not foreclose a determination on the merits." *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 725 (7th Cir. 2004); *see also Ciralsky*, 355 F.3d at 671 (finding that, while dismissing a case *with* prejudice for failure to comply with Rule 8 would have been too harsh a sanction, "there was nothing about [dismissing the action *without* prejudice] that would have barred the plaintiff from correcting the complaint's defects and filing a new lawsuit" and thus doing so was an appropriate remedy); *Brown*, 1997 WL 362505 at *1 (affirming the district court's dismissal of the entire case pursuant to Rule 8 because it did not preclude plaintiff "from filing a new complaint, so long as the complaint provides a brief and clear statement limited to the claims that [she] seeks to litigate"); *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe Cty. Justice Ctr.*, 492 F.3d 1158, 1162 (10th Cir. 2007) ("[D]ismiss[ing] a case without prejudice for failure to comply with Rule 8 of course allows the plaintiff another go at trimming the

---

[6] Plaintiffs have not informed this Court of any statute of limitations issues that could arise in a new case. *See Osborn v. Visa Inc.*, 797 F.3d 1057, 1062 (D.C. Cir. 2015) (concluding that "[w]here, as . . . here, a plaintiff has not notified the district court that a statute of limitations issue might bar the plaintiff 'from correcting the complaint's defects and filing a new lawsuit,' a dismissal of the case without prejudice is not an abuse of discretion"), *cert. granted*, 136 S. Ct. 2543 (2016), *and cert. granted sub nom. Visa Inc. v. Stoumbos*, 136 S. Ct. 2543 (2016), *and cert. dismissed as improvidently granted sub nom. Visa v. Osborn*, No. 15-961, 2016 WL 6808590 (U.S. Nov. 17, 2016).

verbiage; [and] accordingly, a district court may, without abusing its discretion, enter such an order without attention to any particular procedures.").

## IV.     CONCLUSION

This Court agrees with Defendants that Plaintiffs' Fourth Amended Complaint lacks brevity, conciseness, and clarity, and thus fails to provide "adequate notice of the basis of Plaintiffs' claims" in violation of the Federal Rules.  (Defs.' Mot. at 8.)  The unnecessary level of prolixity, detail, and disconnect within the facts and legal claims make it impossible for this Court or Defendants' counsel to proceed with this litigation in any reasonable manner.  *See Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006) (explaining that, "without any obvious means of connecting Plaintiffs' causes of action with the allegation underlying those causes, the court is unable to determine whether Plaintiffs' claims are meritorious" (quotation marks and citation omitted)); *Chennareddy*, 282 F.R.D. at 16 ("Indeed, it is [precisely] because of this lack of clarity and brevity that the Court is unable to determine whether there are sufficient facts to state a claim for relief[.]").  The dismissal of this case without prejudice, as set forth in the accompanying order, leaves open the opportunity for Plaintiffs to simplify and clarify their pleading in a future lawsuit, and will permit the presiding court to reach the merits of the sufficiency of the complaint's allegations.


DATE:  January 13, 2017                         *Ketanji Brown Jackson*
                                                KETANJI BROWN JACKSON
                                                United States District Judge